Terry E. Welch (5819)
Bentley J. Tolk (6665)
Rodger M. Burge (8582)
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
twelch@parrbrown.com
btolk@parrbrown.com
rburge@parrbrown.com

Attorneys for Defendants Kevin G. Long
and Millcreek Commercial Properties, LLC

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DOUGLAS GOLDSMITH, an individual; and GOLDSMITH PROPERTIES, LLC, a Utah limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> KEVIN G. LONG, an individual; MILLCREEK COMMERCIAL PROPERTIES, LLC, a Utah limited liability company; MILLROCK BLYTHEVILLE, LLC, a Utah limited liability company; MILLROCK INVESTMENT FUND 1, LLC, a Utah limited liability company; COLLIERS INTERNATIONAL, a Utah company; MARK MACHLIS, an individual; and GREEN IVY REALTY, INC., a Utah corporation, <br><br> Defendants. | **DEFENDANTS KEVIN G. LONG AND MILLCREEK COMMERCIAL PROPERTIES, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND SUPPORTING MEMORANDUM** <br><br> **(Hearing Requested)** <br><br><br> Case No. 2:24-cv-00499-HCN-DBP <br><br> Judge Howard C. Nielson, Jr. <br><br> Magistrate Judge Dustin B. Pead |

## RELIEF SOUGHT AND GROUNDS FOR THE RELIEF

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and DUCivR7-1, Defendants Kevin G. Long ("Long") and Millcreek Commercial Properties, LLC ("Millcreek") hereby move the Court to dismiss with prejudice the First Amended Complaint [Dkt. 5] (the "Complaint") as to Long and Millcreek filed by Plaintiffs Douglas Goldsmith ("Goldsmith") and Goldsmith Properties, LLC ("Goldsmith Properties"; collectively, "Plaintiffs"). The grounds for the requested relief on the federal causes of action are that: (i) with respect to the 1st and 2nd Causes of Action for violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder, and Section 12(a)(1) of the Securities Act of 1933 (the "Securities Act") for the sale of unregistered securities, respectively, there is no "security" at issue as required by the claims;  (ii) Plaintiffs fail to satisfy the heightened pleading requirements under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), including the requirement to plead with particularity facts demonstrating the Millcreek Defendants acted with the requisite state of mind, or "scienter," and thus the 1st Cause of Action fails as a matter of law; (iii) the 2nd COA fails as a matter of law because Plaintiffs fail to plead facts showing compliance with the time periods set forth in 15 U.S.C. § 77m, as part of a prima facie case under Section 12(a)(1); and (iv) the 3rd Cause of Action for "control person liability" against Long fails as a matter of law because the alleged primary violations fail for the reasons previously stated in subparagraphs (i) through (iii).

The grounds for the requested relief on the state law causes of action are that: (i) Plaintiffs fail to satisfy the heightened pleading requirements under Rule 9(b) for pleading a fraud claim; (ii) Plaintiffs have not identified any negligent statements or omissions specifically

made by Millcreek or Long, and have not alleged sufficient facts giving rise to any duty to disclose any alleged omission; (iii) the breach of fiduciary duty claim fails as a matter of law because, under Utah law, neither Millcreek nor Long as seller agents owed any fiduciary duties to Plaintiffs in connection with their purchase of the commercial property at issue; (iv) the unjust enrichment claim fails because Plaintiffs have not demonstrated they conferred any benefit on Long or Millcreek; and (v) the civil conspiracy claim must be dismissed because the underlying torts alleged by Plaintiffs all fail as a matter of law.

## **INTRODUCTION**

Plaintiffs' Complaint constitutes a "group pleading" that impermissibly groups Long and Millcreek (and the other Defendants) together, without distinguishing the basis for Long or Millcreek's individual alleged culpability or liability. The Complaint's causes of action against Long and Millcreek also constitute threadbare recitals of the elements of each claim, supported by mere conclusory statements. Thus, the facts set forth in support of those causes of action do not qualify as well-pleaded allegations. The transaction at issue in the Complaint does not involve a "security," which is fatal to Plaintiffs' securities-based causes of action. In addition, the Second Cause of Action fails because it does not (and cannot) plead compliance with the timeliness requirements set forth in Section 13 of the Securities Act. Finally, the Complaint is defective because it fails to satisfy either the heightened pleading requirements under the PSLRA or the heightened pleadings requirements under Federal Rule of Civil Procedure 9(b) for pleading a fraud claim, and because it fails to meet the other pleading requirements for its state law causes of action. Plaintiffs' bare-bones Complaint must be dismissed as to Long and Millcreek.

## STATEMENT OF RELEVANT FACTS

1.      On August 6, 2021, plaintiff Goldsmith Properties acquired from defendant Millrock Investment Fund 1, LLC fee simple title in certain commercial real property located in Blytheville, Arkansas. [Complaint, ¶ 4; Warranty Deed, executed on August 21, 2021, attached hereto as Exhibit A.[1]]

2.      In connection with Goldsmith Properties' purchase of the commercial property, on the same date, Goldsmith Properties executed a "Lease Agreement" with defendant Millrock Blytheville, LLC. ["Lease Agreement," dated August 6, 2021, a copy of which is attached hereto as Exhibit B.]

3.      Plaintiffs filed their Complaint on July 16, 2024. [Dkt. # 1.]

4.      Plaintiffs filed their First Amended Complaint on August 7, 2024. [Dkt. # 5.]

## ARGUMENT

"Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted." *IHC Health Servs., Inc. v. Tyco Integrated Sec., LLC,* No. 2:17-CV-00747-DN, 2018 WL 3429932, at *1 (D. Utah July 16, 2018) (citing *Sutton v. Utah State Sch. for Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999)). In addition, to withstand a Rule 12(b)(6) motion, a

---

[1] On a motion to dismiss under Rule 12(b)(6), the Court may consider "documents incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007), and other documents "if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002).

4

complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A complaint that merely alleges a "possible" or "conceivable" claim is insufficient. *Iqbal*, 556 U.S. at 679–80 (quoting *Twombly*, 550 U.S. at 570); *see also Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018). A plaintiff must allege sufficient factual matter that shows he or she is entitled to relief. *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Although pleadings at the motion to dismiss stage are liberally construed, before accepting a plaintiff's allegations as true, "they must be well-pleaded allegations." *Warnick,* 895 F.3d at 751 (emphasis in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not count as well-pleaded facts." *Id.* (internal quotations omitted) (quoting *Iqbal*, 556 U.S. at 678). Here, Plaintiffs fail to assert allegations giving rise to a cognizable claim against Long or Millcreek, and thus this Motion should be granted.

## I.    THE SECURITIES CLAIMS FAIL BECAUSE NO SECURITY IS AT ISSUE.

The federal claims in this case – the First (securities fraud), Second (sale of unregistered securities) and Third (control person liability) Causes of Action – are all claims arising under the federal securities laws. The First and Second Causes Action both require as elements of the claims the existence of a "security," as defined under federal law. *See Smallen v. The W. Union Co.*, 950 F.3d 1297, 1304 (10th Cir. 2020) (to state a claim under Section 10(b)/Rule 10b-5, a plaintiff must plead "… (2) the statement complained of was made in connection with the purchase or sale of securities;") (emphasis added); 15 U.S.C. 77l(a)(1) ("Any person who – (1)

offers or sells a <u>security</u> in violation of Section 77e of this title….") (emphasis added). Additionally, Plaintiffs' Third Cause of Action for "control person" liability is derivative and contingent upon its successfully alleging an underlying primary violation of Section 11 or 12 of the Securities Act, i.e., their First and Second Causes of Action. *See In re Plains All American Pipeline, L.P. Securities Lit.*, 307 F.Supp.3d 583, 618 (S.D. Texas 2018); *see also City of Philadelphia v. Fleming Companies, Inc.,* 264 F.3d 1245, 1270 (10th Cir. 2001) ("To state a prima facie case of control person liability, the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person.") (citation omitted). Accordingly, if Plaintiffs' First and Second Causes of Action fail as a matter of law due to the absence of a "security," the Third Cause of Action for control person liability similarly fails as a matter of law.

Here, Goldsmith Properties purchased commercial real property with a twenty-year lease in place with defendant Millrock Blytheville, LLC.[2] Plaintiffs claim this fee simple title purchase, bundled with a lease, constitutes a "security" for purposes of federal securities laws. [Complaint, ¶¶ 4, 45, 54.] Specifically, Plaintiffs appear to claim Goldsmith Properties' purchase of commercial property, with an existing tenant, constitutes an "investment contract," as such term is defined under the long-standing *Howey* test. [Complaint, ¶ 54.] The factual allegations of the Complaint, however, do not meet the elements of the *Howey* test to give rise to the existence of a "security."

For an "investment contract" to be found, there must be "a contract, transaction or scheme whereby a person [1] invests his money in a [2] common enterprise and is led to [3]

---

[2] A copy of the "Lease Agreement" is attached hereto as Exhibit "B."

expect profits solely from the efforts of the promoter or a third party." *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946). Only if all three elements exist can an "investment contract" security be found. Here, no facts are pled establishing either a common enterprise, or expectations of profits derived from the efforts of others.

A.    **The Transaction Complained Of Involved No Common Enterprise.**

In evaluating the existence of a common enterprise, courts must examine the entire "economic reality of the underlying transaction." *Demarco v. LaPay*, No. 2:09-cv-190, 2009 WL 3855704, at *7 (D. Utah Nov. 17, 2009). Specifically, involving real estate deals, "for an offer of real estate to constitute a security there must be a collateral agreement with the seller or others, or some limitation on the owner's control over the property." *Id.*[3] Plaintiffs have alleged no such agreement. Instead, Plaintiffs' allegations boil down to a simple two-party real estate transaction.

As alleged, Goldsmith Properties purchased the Blytheville property from defendant Millrock Investment Fund 1, LLC for $2,829,478. [Complaint, ¶¶ 4, 39, 45.]  In connection with the sale of that property, Goldsmith Properties also executed a 20-year lease with defendant Millrock Blytheville, LLC, which lease provided for an initial rent of $14,447.92. [*Id.* at ¶ 45.] Plaintiffs' allegations do not reference a collateral management or operating agreement. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1131 (9th Cir. 2013) ("Plaintiffs allege no facts

---

[3] *See also Revak v. SEC Realty Corp.*, 18 F.3d 81, 88–89 (2d Cir. 1994) ("A condominium offer is an investment contract only if it is accompanied by one or more of the following collateral agreements: (i) a rental arrangement coupled with a sales promotion emphasizing the economic benefits to be derived from renting out the condominium through the offices of the condominium management or their agents; (ii) a rental pool arrangement; or (iii) material restrictions on the owner's occupancy or rental of the unit, such as requiring that the unit be available for rental for part of the year, or that the owner use an exclusive rental agent.").

showing that the Purchase Contracts and the Rental Management Agreements were offered as a package.").

The case of *Deckebach v. La Vida Charters, Inc. of Florida* is persuasive in confirming the lack of a common enterprise in this case. *See* 867 F.2d 278 (6th Cir. 1989). In similar circumstances, the plaintiffs in *Deckebach* had purchased a yacht from defendant La Vida Charters, with an accompanying management agreement mandating that La Vida Charters would exclusively facilitate the chartering of the yacht. *Id.* at 279–81. The plaintiffs sued, alleging federal securities law violations, but the Sixth Circuit determined that "the essence of this arrangement was a one-on-one vertical relationship between La Vida and the Deckebachs for the management of their yacht." *Id.* at 284. There simply was no common enterprise between the buyer of the asset and the seller in *Deckebach*, and no such enterprise has been adequately pled involving Plaintiffs and Long or Millcreek.

In short, while "[m]any real estate purchases are entered into as investments . . . it is not enough to allege a transaction was entered into as an investment without alleging evidence of an additional agreement detailing activities sufficient to form a common enterprise." *Demarco v. LaPay*, 2009 WL 3855704, at *8. Many courts have held that real estate transactions between one buyer and one seller of real estate do not constitute a common enterprise under *Howey*.[4]

---

[4] *See e.g., Woodward v. Terracor*, 574 F.2d 1023, 1025–26 (10th Cir. 1978) ("We particularly fail to see any common venture or common enterprise between the plaintiffs and Terracor . . . Terracor was under no contractual obligation to the plaintiffs other than to deliver title once purchase terms were met."); *Alunni v. Dev. Res. Grp., LLC*, 445 Fed. Appx. 288, 296 (11th Cir. 2011) ("[T]he facts of these lawsuits establish that the plaintiffs' purchase of condominium units in Legacy Dunes did not constitute 'investment contracts.' The plaintiffs purchased fee simple interests in real estate, subject only to: (1) the condominium declaration and bylaws; (2) each unit's existing long-term leases (for those that units that had tenants), until they expired; and (3) a one-year period during which the plaintiffs had to lease their units (if they chose to lease them)

Since the transaction alleged by Plaintiffs involves a real estate transaction between one buyer and one seller of real estate, a common enterprise does not exist.

> **B.    The Transaction Created No Expectation For Profits Derived Solely From The Efforts Of The Promoter Or A Third Party.**

With the sale of real property in fee simple, there can be no expectation of profits derived solely from the efforts of the promoter or a third party because even if a long-term tenant is in place, the landlord still has managerial rights over the tenant.

A landowner may freely alienate real property, and a landlord may terminate a tenant's lease at the owner's discretion (albeit risking a breach-of-contract claim). That right to transfer real property or terminate a lease constitutes a right to control. And one "who has ability to control the profitability of his investment . . . is not dependent upon the managerial skills of others." *Gordon v. Terry*, 684 F.2d 736, 741 (11th Cir. 1982). "[A]s long as the investors retain full control over management of the property, their interest will not be deemed a security." *Horowitz v. AGS Columbia Assocs.*, 700 F. Supp. 712, 717 (S.D.N.Y. 1988). Plaintiffs have alleged that Goldsmith Properties "purchased" the Blytheville property. [Compl. ¶ 4.] With the fee ownership of real property comes a full suite of managerial rights over a tenant. Plaintiffs cannot claim that they expected profits to be derived solely from the efforts of the promoter or a third party when they themselves had significant managerial control over the tenant.

---

through Sovereign, the property management company selected by LDC."); *Arnson v. My Investing Place L.L.C.*, 2:09-cv-254, 2012 WL 2922683, at *7 (D. Utah June 7, 2012) ("Plaintiffs took fee simple title to the lots which they apparently retain today. Absent the fraud, the transactions in this case were not unlike many run-of-the mill real estate purchases in which investors buy lots, take out construction loans, expect to resell at a profit, and never intend to occupy the units themselves. Such transactions do not involve securities, and many cases so hold.").

Moreover, a tenant's rent is not even a "profit" within the scope of the securities acts because fixed-income payments are not dependent on the management of a promoter or an original seller—they arise purely as a matter of contract.[5] Plaintiffs allege that they understood they would receive a 6-9% return on the purchase of the property through the lease [Complaint, ¶ 4], based on the "cap rate" as measured by the purchase price for the commercial property, and the rental payments provided for under the lease. Indeed, Plaintiffs admit as much when they state that the rental payments would create fixed income over the term of the lease. [*See* Complaint, ¶ 45.] Simply put, all Plaintiffs have alleged to support the existence of profits

---

[5] *See e.g., Elson v. Geiger*, 506 F. Supp. 238, 242–43 (E.D. Mich. 1980) ("The return on investment that had been promised to the purchasers was the lessee's fixed rent payment, which was totally independent of its profits or managerial expertise . . . Every lessor, in some measure, is reliant upon his commercial lessee's ability to manage the business profitably; however, such reliance will not render every commercial lease a security."); *Commander's Place Park Assoc. v. Girard & Pastel Corp.*, 572 F.2d 1084, 1085–86 (5th Cir. 1978) ("The sale of the [trailer] park was not the sale of an investment contract because the seller, in offering the park for sale, did not lead the purchaser to expect that management arranged by the seller would provide the sole or the crucial efforts needed to produce profits."); *Braniff Airways, Inc. v. LTV Corp.*, 479 F. Supp. 1279, 1287–88 (N.D. Tex. 1979) ("A fixed-income security, on the other hand, is characterized typically by an obligation to pay the holder of the security a stated amount of money at a certain time or under certain conditions; it is essentially a contract for repayment of a loan, and is thus more akin to a commercial contract than is an equity security."); *Robbins v. First Am. Bank Va.*, 514 F. Supp. 1183, 1188 (N.D. Ill. 1981) ("The facts here point to an ordinary commercial transaction. The loan here was for a fixed amount, fixed maturity and a stated interest rate . . . [T]he bank's profits from the transaction turn upon the original terms of the transaction and not upon another's efforts. All of these factors indicate a commercial arrangement between borrower and bank precluding coverage under the securities laws."); *Can. Imperial Bank Com. Tr. Co. v. Fingland*, 615 F.2d 465, 470 (7th Cir. 1980) (holding that plaintiff had failed to plead an expectation of future profits regarding certain fixed-rate certificates); *United Am. Bank Nashville v. Gunter*, 620 F.2d 1108, 1118 (5th Cir. 1980) ("In view of the facts that there was no anticipated appreciation in the value of the plaintiff's loan participation and that the rate of return was fixed, that Court concludes that the plaintiff's expected return was no different than that expected in an ordinary commercial transaction.").

resulting solely from the efforts of the promoter or a third party is that they were led to believe that the tenant would pay rent on time.

Plaintiffs have, at most, alleged that they bought a piece of real property from a seller with the expectation that the property would appreciate in value and that they would be paid rent payments from the then-current tenant. Since Plaintiffs have alleged no collateral operating agreement, Plaintiffs are merely complaining of a real estate deal gone wrong due to a defaulting tenant. They have not alleged the sale of a security, and thus the First and Second Causes of Action fail as a matter of law.

Moreover, since the First and Second Causes of Action fail as a matter of law, the Third Cause of Action for "control person liability" necessarily fails as a matter of law due to the lack of a "primary violation" *See TDC Lending LLC v. Priv. Cap. Grp., Inc.*, 340 F. Supp. 3d 1218, 1231 (D. Utah 2018) ("TDC's control person liability theory first requires a showing that Private Capital committed a primary violation of the securities laws . . . because TDC has not alleged a primary violation of securities laws, it cannot show that the Individual Defendants are liable as controllers of a primary violator."); *Hampton v. root9B Techs., Inc.*, 897 F.3d 1291, 1303 (10th Cir. 2018) ("[B]ecause we conclude that Mr. Hampton's § 10(b) claims fail, his § 20(a) claims necessarily fail; a § 20(a) claim must be premised on a primary violation of the securities laws, but no such violation has been established here.").

## II.    PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM FOR VIOLATION OF THE EXCHANGE ACT.

### A.    Pleading Standards under Rule 9(b) and the PSLRA.

Under Federal Rule of Civil Procedure 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b) (2024) (emphasis added). Rule 9(b) applies to all claims that are "based on the same core allegations of deception, false misrepresentations, and fraudulent conduct." *Security Sys., Inc. v. Alder Holdings, LLC*, 421 F.Supp.3d 1186, 1194 (D. Utah 2019). "To satisfy Rule 9(b)'s heightened pleading standard, among other things, a pleading must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Combs v. SafeMoon LLC*, Case No. 2:22-cv-00642-DBB-JCB, 2024 WL 1347409, *4 (D. Utah March 29, 2024), *citing Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997).

In two key ways, Congress heightened the pleading standard above that provided for in Rule 9(b) for federal securities fraud claims with the passage of the PSLRA. First, the PSLRA increased the burden on the pleading of the first element of a securities fraud claim – that the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements made not misleading. *See Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003). For this element, the PSLRA requires that:

> the Complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1) (2024).

12

Second, regarding the pleading of the "scienter" or intent to defraud element, the PSLRA superseded this part of Rule (9)(b) by imposing a more stringent rule of pleading:

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

*See Adams,* 340 F.3d at 1096, *citing* 15 U.S.C. § 78u-4(b)(1) (2024) (emphasis added).

Regarding the scienter element, the PSLRA requires scienter to be found with respect to each defendant and with respect to each alleged violation. *See TDC Lending LLC v. Priv. Cap. Grp.*, 340 F.Supp.3d 1218, 1227 (D. Utah 2018). Further, the required "strong inference" of scienter must be more than merely reasonable or permissible – "it must be cogent, thus strong in light of other explanations. A complaint will survive only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct. *See id.* at 323-24.

The First Cause of Action for violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, should be dismissed in its entirety with prejudice because Plaintiffs have failed to allege well-pled facts to establish any violation. To state a claim under Section 10(b)/Rule 10b-5, a plaintiff must plead: "(1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the

purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance." *Smallen v. The W. Union Co.*, 950 F.3d 1297, 1304 (10th Cir. 2020). Here, Plaintiffs fail to adequately plead facts satisfying the heightened pleading standards described above for either the first or third elements – an untrue or misleading statement of material fact (or omission of a material fact), or that Millcreek or Long acted with scienter. The First Cause of Action should therefore be dismissed.

**B.    Plaintiffs Fail To Sufficiently Plead Any Untrue Or Misleading Statements By Millcreek Or Long.**

Plaintiffs fail to identify any alleged untrue or misleading statements specifically made or omitted by Long or Millcreek in connection with Plaintiffs' fee simple purchase of the Blytheville commercial property. In the Complaint, the Plaintiffs reference various allegedly fraudulent misrepresentations and omissions, but Plaintiffs fail to set forth the "**time, place** and contents of the false representation," or "**the identity of the party making the false statements** and the consequences thereof," as required under applicable pleading standards. *Combs*, 2024 WL 1347409 at *4 (emphasis added). For example, Plaintiffs allege certain misrepresentations and omissions by "Defendants." [Complaint, ¶¶ 1, 3, 5, 6.] Those allegations do not set forth the time or place of such misrepresentations, and "group pleading" against "Defendants" is impermissible under Rule 9(b) and the PSLRA. *See TDC Lending LLC v. Priv. Cap. Grp.*, 340 F. Supp. 3d 1218, 1227 (D. Utah 2018) ("Group pleading, in contrast, allows a plaintiff to group defendants together without distinguishing the bases for each defendant's culpability. This is incompatible with the purpose of the PSLRA…."). Regarding any alleged misrepresentations or omissions by Millcreek or Long in connection specifically with the Blytheville transaction at

14

issue, Plaintiffs make no mention of the identity of any person(s) making the alleged misrepresentations or omissions, except impermissibly group pleading "Defendants" in paragraph 48. [Complaint, ¶¶ 39-52.]

The only alleged representations by Millcreek in the Complaint are taken from Millcreek's website providing general business information to investors in tenant-in-common ("TIC") properties that Millcreek also markets. [Complaint, ¶¶ 33, 35 and 36.] The transaction at issue here, however, was not a TIC transaction because Plaintiffs took fee simple title to the Blytheville property. [Complaint, ¶¶ 33, 35 and 36.] Thus, the alleged representations by Millcreek on its website are not applicable. Even if they were applicable (which they are not), those representations fail to provide the required "when." Moreover, the statements in paragraph 33 – "rest assured our portfolio is rock solid," "we vigorously vet every property that we offer," and that Millcreek sold only properties with tenants who can "thrive in any economic environment"[6] – all constitute "puffery," which is not actionable. *See City of Austin Police Retirement System v. Kinross Gold Corp.*, 957 F.Supp.2d 277, 297 (S.D.N.Y. 2013) (mining exploration company's statements as to extent and quality of due diligence it performed in anticipation of acquisition of West African gold mining operation were mere puffery, and as such not actionable as securities fraud); *City of Royal Oak Retirement System v. Juniper Networks, Inc.*, 880 F.Supp.2d 1045, 1064 (N.D. Cal. 2012) (statements technology company made in investment conference calls regarding its "strong partners" and "robust" product portfolio were merely expressions of confidence in the company's outlook, and, as puffery, not actionable).

---

[6] The provided excerpt actually does not make this statement.

Further, the alleged statements by Millcreek allegedly taken from some of its TIC property marketing materials set forth in paragraphs 35 and 36 of the Complaint regarding HSH – a tenant in some of the TIC properties marketed by Millcreek – likewise do not satisfy Plaintiffs' pleading burden. Specifically, no facts are alleged demonstrating that any statements about HSH being a public company, or that its business being focused on providing clinicians with "state of the art diagnostic tools," were false.[7]

In short, the Complaint fails to sufficiently plead the existence of any untrue statements or omissions by Long or Millcreek that could provide a basis for liability under Section 10(b) and Rule 10b-5.

### C.    Plaintiffs Fail To Sufficiently Plead Facts Establishing Millcreek Or Long Acted With Scienter.

As stated above, Plaintiffs must "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that [Millcreek and Long] acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added). The "required" state of mind is an "intent to defraud" or "recklessness," which is defined as "conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1258 (10th Cir. 2001). Here, Plaintiffs fail to sufficiently plead facts establishing Millcreek and Long acted with scienter with respect to the alleged misrepresentations (or omissions), and thus the First Cause of Action must be dismissed.

---

[7] Additionally, for purposes of the scienter requirement, no facts are alleged from which a "strong inference" can be drawn that Millcreek knew these statements were false.

Plaintiffs fail to plead any facts establishing Millcreek or Long knew any statement attributable to them was false or misleading (or that they acted "recklessly" in regard to the truth thereof). Indeed, even with respect to the statements attributed to Millcreek from its TIC marketing materials and regarding HSH in paragraphs 33, 35, and 36 of the Complaint, Plaintiffs have not pled any facts from which a strong inference can be drawn that Millcreek acted with scienter in making those statements. Accordingly, even if Plaintiffs had adequately pled a misrepresentation or omission by Millcreek or Long, which they have not, Plaintiffs' failure to sufficiently plead facts establishing scienter on the part of either Millcreek or Long is fatal to their claim, and thus the First Cause of Action must be dismissed.

**III.    THE SECOND CAUSE OF ACTION FAILS AS A MATTER OF LAW BECAUSE PLAINTIFFS HAVE NOT PLED COMPLIANCE WITH THE TIMELINESS REQUIREMENTS OF SECTION 13.**

Under the Second Cause of Action, Plaintiffs claim Millcreek and Long are liable under Section 12(a)(1) of the Securities Act. That claim fails as a matter of law because Plaintiffs did not file the Complaint within the one-year period from the alleged violation of Section 12(a)(1), as required under Section 13 of the Securities Act.

Section 12(a)(1) provides the exclusive federal cause of action for failure to register public or private securities, and imposes liability on those who offer or sell securities without complying with the applicable statutory registration and prospectus requirements in Section 5 of the Securities Act. *See Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 916 (6th Cir. 2007); *see also Holland v. GEXA Corp.*, 161 F.App'x 364, 366 (5th Cir. 2005). To state a cause of action under Section 12(a)(1), a plaintiff must show: (i) a lack of a registration statement for the securities at issue; (ii) the offer or sale of securities; and (iii) use of interstate transportation or

communication in the offer or sale. *See e.g., Rocky Aspe Mgmt. 204 LLC v. Hanford Holdings, LLC*, 230 F.Supp. 3d 159, 165 (S.D.N.Y. 2017). Additionally, to establish a prima facie case under Section 12(a)(1), courts require a plaintiff to plead facts and show compliance with the timeliness requirements under Section 13 of the Securities Act. *See Toombs v. Leone*, 777 F.2d 465, 468 (9th Cir. 1985); *see also Mori v. Saito,* 2013 WL 1736527, at *3 (S.D.N.Y. Apr. 9, 2013); *Pullins v. Kimley*, 2008 WL 85871, at *9 (S.D. Ohio Jan. 7, 2008).

Section 13 of the Securities Act provides both a statute of limitation and a statute of repose for Section 12(a)(1) claims, requiring a private investor to bring suit within: (i) one year after the violation on which the lawsuit is based; and (ii) no more than three years after the security was bona fide offered to the public. *See* 15 U.S.C. § 77m. For purposes of the one-year period, most courts agree that the violation occurs when a prospective buyer actually purchases the securities. *See e.g.*, *In re Biozoom, Inc. Sec. Litig.*, 93 F.Supp. 3d 801, 810 (N.D. Ohio 2015); *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F.Supp. 2d 658, 680 (E.D. Tex. 2004). A few courts, however, have found that the triggering date is the date of the last conduct constituting the alleged violation, which is usually the later of the date of the offer, sale, or delivery of an unregistered security. *See e.g., Barnert v. Pulte Home Corp.*, 2013 WL 12152406, at *11 (M.D. Fla. Sept. 5, 2013). Neither this Court nor the Tenth Circuit Court of Appeals appears to have ruled on this issue. Regardless of which approach the Court takes in determining the triggering date, Plaintiffs failed to plead facts showing timely compliance with Section 13.

Plaintiffs filed their Complaint on July 16, 2024. [Dkt. # 1.] They acquired title to the Blytheville property, however (which they claim is the "security" at issue), on August 6, 2021.[8]

---

[8] *See* Warranty Deed, attached hereto as Exhibit "A."

Because the Complaint was filed well beyond Section 13's one-year time period for bringing an action under Section 12(a)(1), Plaintiffs' Second Cause of Action for sale of unregistered securities fails as a matter of law.

## IV.    PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW.

In addition to the federal claims discussed above, upon which Plaintiffs rely for this Court exercising jurisdiction in this matter, Plaintiffs also assert the following state law claims against Millcreek and Long: (i) common law fraud (4th Cause of Action); (ii) negligent misrepresentation (5th Cause of Action); (iii) breach of fiduciary duty (6th Cause of Action); (iv) unjust enrichment (7th Cause of Action); and (v) conspiracy (8th Cause of Action). Defendants March Machlis and Green Ivy Realty, Inc. have filed a motion to dismiss those claims [Dkt. 37], and for the same reasons cited in that motion to dismiss (which are briefly cited below), Plaintiffs' state law claims also fail as a matter of law.

### A.    Common Law Fraud And Negligent Misrepresentation Claims.

While the PSLRA pleading requirements do not apply to common law fraud claims, the claim is still governed by the heightened pleading requirements of Rule 9(b). This Court has stated:

> When alleging fraud, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." This requires a plaintiff to "set forth the who, what, when, where and how of the alleged fraud" and "describe the time, place, and contents of the false representation, the identity of the party making the false statements, and the consequences thereof."

*TDC Lending LLC*, 340 F.Supp.3d at 1224.

For the same reasons explained in Section II above regarding Plaintiffs' failure to sufficiently plead their securities fraud claim, the common law fraud claim likewise fails by reason of Plaintiffs' failure to meet this pleading requirement. Specifically, Plaintiffs failed to plead the "who, what, when, where and how" of Millcreek and Long's alleged fraud. Instead, they generally group pled that "Defendants" made various misrepresentations and omissions. Those allegations are insufficient to satisfy the heightened pleading requirements of Rule 9(b), and thus the common law fraud claim fails as a matter of law.

Likewise, the negligent misrepresentation claim suffers from the same fatal flaw. The Complaint does not set forth factual allegations identifying which Defendants made each allegedly negligent misrepresentation or omission. The negligent misrepresentation claim [Complaint, ¶¶ 83-94] appears to suggest representations were made by one or more Defendants about the tenant on the Blytheville property – Defendant Millrock Blytheville, LLC. No representations concerning Millrock Blytheville, however, are identified in the Complaint, including representations that were misleading due to any specifically alleged omissions regarding Millrock Blytheville. Further, Plaintiffs' generalized allegations that all of the Defendants owed Plaintiffs a duty to disclose any alleged omissions is insufficient to adequately plead a claim for negligent misrepresentation. The claim must therefore be dismissed.

### B.    The Breach Of Fiduciary Duty Claim Fails As A Matter Of Law.

Plaintiffs' 6th Cause of Action for breach of fiduciary duty fails as a matter of law because neither Millcreek nor Long owed Plaintiffs any fiduciary duties. No specific allegations concerning any fiduciary duties owed by Millcreek or Long are set forth in the Complaint. Instead, Plaintiffs generally alleged that "Defendants owed Plaintiffs fiduciary duties of utmost

honesty, loyalty, and care," and that "Defendants breached their fiduciary duties to Plaintiffs by, inter alia, failing to investigate the legitimacy of the tenant and guarantor or concealing their knowledge regarding the same and by making the materially false or misleading representations or omissions alleged above" relating to Plaintiffs' purchase of the Blytheville property. [Complaint, ¶¶ 100, 105.]

As explained by Defendants Mark Machlis and Green Ivy Realty, Inc. in their motion to dismiss, under Utah law, the seller's real estate agent does not owe any fiduciary duties to the purchaser, particularly where a sophisticated party is purchasing commercial property. *See Diversified Holdings, L.C. v. Turner,* 2002 UT 129, ¶ 23, 63 P.3d 686. It is undisputed that neither Millcreek nor Long was an agent representing Plaintiffs in the transaction at issue, and Plaintiffs do not allege otherwise. Thus, Millcreek and Long owed no fiduciary duties to Plaintiffs as the purchasers of the Blytheville property. Moreover, Plaintiffs knew they were purchasing valuable commercial property and were represented, or had the opportunity to be represented, by their own real estate agent. Consequently, Plaintiffs' breach of fiduciary duty claim against Millcreek and Long fails as a matter of law.

## C.    The Unjust Enrichment Claim Fails As A Matter Of Law.

The 7th Cause of Action for unjust enrichment fails as a matter of law because Plaintiffs failed to adequately allege they conferred a benefit on Millcreek or Long. "To support a claim for unjust enrichment, a plaintiff must allege facts supporting three elements: '(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention of the benefit under circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.'" *Hess v. Johnson,*

2007 UT App 213, ¶ 20, 163 P.3d 747 (quoting *Jeffs v. Stubbs*, 970 P.2d 1234, 1248 (Utah 1998)). Based on the allegations of the Complaint, the only "benefit" either Millcreek or Long purportedly received was a 2% seller's agent fee paid to Long and Colliers. [Complaint, ¶ 47.] On its face, however, that fee was paid by the seller, Millrock Blytheville, LLC, and the settlement statement from which Plaintiffs base the allegation shows as much and that it was paid to Colliers.[9] Accordingly, Plaintiffs fail to allege any facts demonstrating that they conferred a benefit on either Millcreek or Long. The unjust enrichment claim must be dismissed.

Further, even if the payment of a commission to Colliers resulted in Long or Millcreek receiving a portion of the commission (which is not alleged), any retention of any portion of the fee would not be inequitable as a matter of law. As defendants Mark Machlis and Green Ivy Realty, Inc. explained in their motion to dismiss, a real estate agent is entitled to receive and retain compensation for services rendered, and it would not be inequitable for a real estate agent to retain the brokerage fee from the sale of a property. The unjust enrichment claim should also be dismissed as to Millcreek and Long on that basis as well.

### D.   The Civil Conspiracy Claim Fails As A Matter Of Law.

The Eighth Cause of Action contains a claim for "civil conspiracy" against all Defendants, including Millcreek and Long. Under Utah law,

> The claim of civil conspiracy require[s], as one of [its] essential elements, an underlying tort. Thus, in order to sufficiently plead a claim for civil conspiracy, a plaintiff is obligated to adequately plead the existence of such a tort. Where plaintiffs have not adequately

---

[9] A copy of the settlement statement is attached hereto as Exhibit C, and the Court is permitted to consider the document on a motion to dismiss where it is incorporated by Plaintiffs' reference to the commissions, and it is "central" to their claim. *Tellabs, Inc.,* 551 U.S. at 322; *Jacobsen,* 287 F.3d at 941.

pleaded any of the basic torts they allege . . . dismissal of their civil conspiracy claim is appropriate.

*Estrada v. Mendoza*, 2012 UT App 82, ¶ 13, 275 P.3d 1024 (internal quotations and citations omitted) (alterations in original). For the reasons outlined above, Plaintiffs have failed to adequately plead the underlying torts against Millcreek and Long. Accordingly, the conspiracy claim must be dismissed.

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed as to Millcreek and Long.

## REQUEST FOR ORAL ARGUMENT

Pursuant to DUCivR7-1(g), Millcreek and Long respectfully request oral argument on this Motion. Good cause exists for oral argument because this Motion seeks dismissal of all causes of action as to Millcreek and Long.

RESPECTFULLY SUBMITTED this 22nd day of October, 2024.

PARR BROWN GEE & LOVELESS

By: /s/ Rodger M. Burge
    Terry E. Welch
    Bentley J. Tolk
    Rodger M. Burge

    Attorneys for Defendants Millcreek Commercial Properties, LLC and Kevin Long

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of October, 2024, a true and correct copy of the foregoing **DEFENDANTS KEVIN G. LONG AND MILLCREEK COMMERCIAL PROPERTIES, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT AND SUPPORTING MEMORANDUM** was served via the Court's ECF electronic filing system on all parties making an appearance in this matter:

/s/ Rodger M. Burge