## PURCHASE AND SALE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS

THIS PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (this "**Agreement**") is made and entered into as of August 4, 2021, (herein the "**Effective Date**") by and between **MILLROCK INVESTMENT FUND 1, LLC**, a Utah limited liability company (collectively "**Seller**"), and **GOLDSMITH PROPERTIES, LLC**, a Utah Limited Liability Company, ("**Buyer**"). Buyer and Seller shall sometimes be referred to herein individually as a "**Party**" and collectively as the "**Parties**."

### RECITALS

A. Seller owns or has contracted to purchase that certain real property together with all improvements and entitlements associated therewith located at 3327 S. Division Street, Blytheville, Arkansas 72315, as more particularly described on Exhibit "A" attached hereto ("**Property**").

B. Seller desires to sell to Buyer and Buyer desires to purchase the Property from Seller pursuant to the terms and conditions set forth in this Agreement.

C. The sale of the Property contemplated hereby is expressly contingent upon Millrock Blytheville, LLC as Landlord and SARC BY HSH ASC BLYTHEVILLE, LLC, as tenant executing that certain Lease Agreement relative to the Property dated August 6, 2021 (the "SARC Lease").

D. The sale of the Property contemplated hereby is expressly contingent upon Buyer and Millrock Blytheville, LLC entering into a 100-year lease of the Property (the "**Lease**") which shall expressly permit the Millrock Blytheville, LLC to further develop the Property upon its leasehold interest and to assign fractional interests in the Lease to subsequent investors into the Property together with such other terms and conditions as set forth therein.

### AGREEMENT

NOW THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**1.   Purchase and Sale.**

**1.1   Purchase of Real Property**. Seller agrees to sell to Buyer and Buyer agrees to buy from Seller the Property together with all associated personal property rights, water rights, contract rights and other property rights constituting, appurtenant to including; i) all easements, permits, licenses, rights, privileges, franchises, and all other interests pertaining to, appurtenant to, or otherwise benefitting the Property, whether or not located on the Property; ii) all right, title and interest of Seller in and to any land lying in the bed of any body of water or watercourse, street,

DocuSign Envelope ID: 7E0BD496-AC24-43E8-B5DA-472F99C4D103

road, or path and all strips and gores adjoining the Property; and, iii) all fixtures and appurtenances, including, without limitation, all trees, buildings, fences, and other improvements located on the Property (collectively, the "**Real Property**").

    **1.2** **Personal and Other Property**. Further, Seller shall sell, and Buyer shall buy all of Seller's right, title, and interest in and to all personal and other property, tangible and intangible, owned by Seller and used in connection with the Real Property and also all personal and other property that may have been owned or used by any tenants, lessees, licensees or invitees of the Property that are located on the Property on the Closing Date (collectively, the "**Personal and Other Property**").

**2.** **Purchase Price**. The purchase price to be paid for the Real Property and Personal and Other Property (the "**Purchase Price**") shall be TWO MILLION EIGHT HUNDRED TWENTY-NINE THOUSAND FOUR HUNDRED SEVENTY-EIGHT AND 81/100 DOLLARS ($2,829,478.81) payable as follows:

    **2.1** Two Million Five Hundred Sixty-Four Thousand Seven Hundred Fifty and 81/100 Dollars ($2,564,755.81) which shall be paid in certified funds at the time of Closing.

    **2.2** Two Hundred Sixty-Four Thousand and no/100 Dollars ($264,723.00) payable to Seller pursuant to the terms and conditions of that certain Promissory Note attached hereto and incorporated herein by reference as Exhibit "B" (the "**Note**").

**3.** **Opening of Escrow; Deposit**. Not later than July __, 2021, the parties shall open an escrow account with Old Republic Title Agency, attention, Forest Anthony ("**Escrow Agent**"), and Buyer shall deliver to Escrow Agent a fully executed original of this Agreement and deposit with Escrow Agent, together with the sum of Ten Thousand Dollars ($10,000.00) (the "**Deposit**"). Seller and Buyer hereby instruct Escrow Agent to place the Deposit into an interest-bearing account with no penalty for early withdrawal and to hold and disburse the Deposit pursuant to this Agreement. Buyer shall bear all risk associated with the investment of the Deposit at all times prior to disbursement of the Deposit to Seller. If the purchase and sale transaction described in this Agreement (the "**Purchase and Sale Transaction**") is consummated, the Deposit shall be credited and applied to the Purchase Price. Except for the express rights of Buyer to obtain a return of the Deposit upon termination of this Agreement as specifically provided for herein, the Deposit shall, upon the expiration of the Due Diligence Period, be deemed fully earned by Seller and shall be non-refundable. In the event Buyer shall provide Seller with written notice of termination prior to the expiration of the Due Diligence Period, Escrow Agent, upon receipt of a copy of such notice of termination, shall disburse the Deposit to Buyer.

**4.** **Title Report**. Buyer has reviewed the status of title to the Property as of the Effective Date and approves the same. At Closing Buyer shall receive, and Seller shall pay for a standard coverage ALTA owner's title insurance policy - 2006 form) (the "**Title Policy**"). All taxes and assessments against the Real Property which are not yet due and payable, all standard (pre-printed) exceptions contained in a standard coverage ALTA owner's title insurance policy, for property in the State of Arkansas, and all other matters affecting title to the Real Property contained in the Title Policy shall constitute the "**Permitted Exceptions.** Notwithstanding any language to the contrary in this Agreement, all mortgages, deeds of trust, liens, and other financial encumbrances

DocuSign Envelope ID: 7E0BD496-AC24-43E8-B5DA-472F99C4D103

of any kind related to the Property must be fully paid off at the Closing and shall not be Permitted Exceptions.

5. **Surveys; Property Documents; Disclosures**. Seller has previously provided to Buyer copies of: (i) any existing surveys of the Property in Seller's possession ("Surveys"), (ii) all records and documents pertaining to the Personal and Other Property, and (iii) other drawings, plans, studies, leases, records, reports (including, without limitation, environmental reports and studies), tests, and other documents relating to the Property which are in Seller's possession or control (collectively, the "**Additional Documents**"). As of the Effective Date Seller has disclosed to Buyer in writing all known defects, including all health, safety, environmental, and other conditions respecting the Property; and (c) disclose to Buyer in writing all other necessary disclosures required under applicable laws, regulations, and ordinances (collectively, the "**Seller Disclosures**"). All Seller Disclosures are furnished to Buyer "AS IS" with no warranty or representations of any kind whatsoever from Seller. All of the Seller Disclosures have been made to the best knowledge of Seller, its trustees, partners, shareholders, agents, officers, and employees.

6. **Seller Representations and Warranties**. The representations and warranties of Seller set forth below are made as of the date of this Agreement and shall continue through Closing. Seller hereby represents and warrants to Buyer that:

   6.1 Organization; Good Standing. Seller is a Utah limited liability company, duly organized, existing, and in good standing under and by virtue of the laws of the State of Utah and has full limited liability company power and authority to enter into this Agreement.

   6.2 Authority. The execution of this Agreement by Seller and its delivery to Buyer have been duly authorized, and no further authorization or other authority is necessary on the part of Seller for such execution and delivery.

   6.3 Leases; Other Agreements. The Property is not subject to any other leases, tenancies, rental agreements, hunting or grazing permits, licenses, or other contracts, claims, or rights of any kind.

   6.4 No Transfers. Except as set forth in the Title Report, Seller has not sold, conveyed, assigned, leased or otherwise transferred and shall not sell, convey, assign, lease or otherwise transfer all or any part of the Property.

   6.5 Condemnation; Eminent Domain. To Seller's Knowledge (defined below), there are no condemnation, eminent domain, or similar proceedings affecting any of the Property.

   6.6 Liens. Seller has paid or will pay for all work, labor and materials furnished to the Property prior to the Closing. To Seller's Knowledge, there are no claims of any mechanics, laborers, or persons furnishing materials to the Property.

   6.7 Actions. To Seller's Knowledge, there are no actions, suits, judgments, claims, bankruptcy proceedings, or other matters pending or threatened, against or affecting Seller or the Property, at law or at equity, before or by any person or entity, which would affect in any way the Property or any part thereof.

**6.8**    Binding Agreement. Upon Seller's execution of this Agreement, this Agreement shall be binding and enforceable against Seller in accordance with its terms, and upon Seller's execution of the additional documents contemplated by this Agreement, they shall be binding and enforceable against Seller in accordance with their terms.

For purposes of this Agreement, "**Seller's Knowledge**" means the current, actual knowledge (with no duty to investigate) of Kevin Long. In no event shall the individual listed above have any personal liability of any kind.

**7.**    **Buyer Representations and Warranties**. The representations and warranties of Buyer set forth below are made as of the date of this Agreement, shall continue through Closing, and shall survive the Closing for a period of one (1) year. Buyer hereby represents and warrants to Seller that:

**7.1**    Organization; Good Standing. Buyer is a Utah limited liability company, duly organized, existing, and in good standing under and by virtue of the laws of the State of Utah and has full corporate power and authority to enter into this Agreement.

**7.2**    Authority. The execution of this Agreement by Buyer and its delivery to Seller have been duly authorized and no further corporate or other authority is necessary on the part of Buyer for such execution and delivery.

**7.3**    Binding Agreement. Upon Buyer's execution of this Agreement this Agreement shall be binding and enforceable against Buyer in accordance with its terms, and upon Buyer's execution of the additional documents contemplated by this Agreement, they shall be binding and enforceable against Buyer in accordance with their terms.

**8.**    **Due Diligence.**   As of the Effective Date Buyer has performed such due diligence and review (the "**Due Diligence**") of the Property as Buyer has deemed appropriate.

**8.1**    Cooperation. Seller shall, at no additional cost or expense to Seller, cooperate with Buyer in connection with Buyer's efforts close the purchase of the Property.

**8.2**    Confidentiality of Seller Disclosures and Results of Due Diligence. The results of Buyer's Due Diligence, shall be kept and maintained strictly confidential by Buyer, and the contents thereof shall not be disclosed to any other party; provided, however, the results of any Due Diligence, may be disclosed to Buyer's attorneys, lenders, brokers, consultants and potential bankers of Buyer specifically working with Buyer on the Purchase and Sale Transaction (collectively, "**Buyer's Consultants**") to the limited extent necessary to allow Buyer to consummate the Purchase and Sale Transaction specifically contemplated by this Agreement.

**9.**    **"AS IS" Purchase**.

**9.1**    Disclaimer. Except as expressly set forth herein, Seller has not made, and Buyer acknowledges that Seller has not made, any warranty, certification, or representation, express or implied, written or oral, statutory or otherwise, concerning the Property, any portion thereof, or the Seller Disclosures. Without limiting the generality of the foregoing, Seller has not made, and Buyer acknowledges that Seller has not made, any warranty, certification, or representation related

DocuSign Envelope ID: 7E0BD496-AC24-43E8-B5DA-472F99C4D103

to: (i) the condition of title to the Property; (ii) the nature, physical condition or any other aspect of the Property; (iii) the existence of hazardous materials in, on, about, under or affecting the Property; (iv) the compliance of the Property with any federal, state or local laws, ordinances, statutes, rules, codes or regulations (including, without limitation, any environmental laws or any zoning codes), (v) the size, dimensions or square footage of the Real Property, (vi) the fitness of the Property for any particular purpose (including without limitation the current use thereof); or (vii) the completeness, adequacy, truthfulness, or accuracy of the Seller Disclosures.

**9.2** Acceptance. SUBJECT TO THE EXPRESS TERMS OF THIS AGREEMENT, BUYER ACKNOWLEDGES FOR BUYER AND BUYER'S SUCCESSORS AND ASSIGNS, THAT BUYER WILL BE ACQUIRING THE PROPERTY BASED SOLELY UPON BUYER'S OWN INVESTIGATION AND INSPECTION THEREOF. SELLER AND BUYER AGREE THAT, EXCEPT AS EXPRESSLY SET FORTH IN SECTION 6, SECTION 17 AND SECTION 34 AND DOCUMENTS SIGNED BY SELLER AT THE CLOSING, THE PROPERTY SHALL BE SOLD AND BUYER SHALL ACCEPT TITLE TO AND POSSESSION OF THE PROPERTY ON THE CLOSING DATE "**AS IS, WHERE IS, WITH ALL FAULTS**" WITH NO RIGHT OF SET OFF OR REDUCTION IN THE PURCHASE PRICE, SUCH SALE SHALL BE WITHOUT REPRESENTATION, CERTIFICATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, ORAL OR WRITTEN, STATUTORY OR OTHERWISE, AND SELLER DOES HEREBY DISCLAIM AND RENOUNCE ANY SUCH REPRESENTATION, CERTIFICATION OR WARRANTY

**9.3** Material Inducement – The Lease. As a condition of Closing and as a material inducement for Buyer to purchase the Property as contemplated herein, Buyer, as Landlord and Seller as Tenant, agree to execute and deliver to each other that certain lease attached hereto and incorporated herein by reference as Exhibit "C" (the "**Lease**"). Notwithstanding any other provision of this Agreement, Buyer and Seller acknowledge and agree that the execution and delivery of the Lease is a material inducement to Buyer's purchase of the Property, and that Buyer would not be willing to purchase all or any part of the Property from Seller, or enter into this Agreement, without Seller's express agreement to the terms and conditions of the Lease.

**10.** **Deliveries To Escrow Agent on or before the Closing Date**. The parties shall, on or before the Closing Date, deliver the following to Escrow Agent (collectively, the "**Deliveries**"):

**10.1** Buyer's Deliveries. Buyer shall deliver the following to Escrow Agent:

**10.1.1** Purchase Price. The Purchase Price of TWO MILLION EIGHT HUNDRED TWENTY-NINE THOUSAND FOUR HUNDRED SEVENTY-EIGHT AND 81/100 DOLLARS ($2,829,478.81), in the form of:

10.1.1.1  Two Million Five Hundred Sixty-Four Thousand Seven Hundred Fifty and 81/100 Dollars ($2,564,755.81) in certified funds.

10.1.1.2  The Note in the amount of Two Hundred Sixty-Four Thousand and no/100 Dollars ($264,723.00).

**10.1.2** The Lease. The Lease duly executed by Buyer in the form attached hereto as Exhibit "C".

DocuSign Envelope ID: 7E0BD496-AC24-43E8-B5DA-472F99C4D103

**10.1.3** Other Documents. Any other documents or instruments reasonably necessary or appropriate, consistent with this Agreement, as may be required by Escrow Agent or the Title Company.

**10.2** Seller's Deliveries. Seller shall deliver the following to Escrow Agent:

**10.2.1** Deed. The Special Warranty Deed (the "**Deed**") for the Real Property, fully executed and acknowledged, in recordable form, in form and content of the Deed attached hereto as Exhibit "D".

**10.2.2** The Lease duly executed by Seller in the form attached hereto as Exhibit "C".

**10.2.3** The SARC Lease duly executed by Seller and the tenant referenced therein.

**10.2.4** Non-Foreign Affidavit. A Non-Foreign Person Affidavit, duly executed and sworn to by Seller and acknowledged in form and content acceptable to Buyer and the Escrow Agent, together with any like document required under State law.

**10.2.5** Other Documents. Any other documents or instruments reasonably necessary or appropriate, consistent with this Agreement, as may be required by Escrow Agent or the Title Company.

**11.** **Conditions to Closing**. Any other term or provision of this Agreement to the contrary notwithstanding, the obligation of the parties to consummate the Purchase and Sale Transaction is expressly subject to and conditioned upon the fulfillment of each of the following conditions ("**Conditions**"):

**11.1** No Change to the Property. Prior to Closing there shall not have occurred any other material change with respect to the Property.

**11.2** No Default. Neither of the parties shall be in breach or default of their obligations under this Agreement or under any supplemental agreement.

**11.3** Deliveries. Buyer and Seller shall have made the Deliveries required pursuant to Section 10.

**11.4** Commitment for Title Insurance. The Title Company shall have irrevocably committed to Buyer to issue the Title Policy on the Closing Date in the amount of the Purchase Price insuring fee simple, marketable title in Buyer as to the Property, subject only to the Permitted Exceptions and standard (pre-printed) exceptions relating to a standard owner's policy of title insurance other than any standard (pre-printed) exceptions that the Title Company shall have agreed to delete by endorsement to the Title Report or by amending the Title Report prior to the expiration of the Due Diligence Period. Buyer may, at its expense, obtain extended coverage and/or such endorsements for the Property as Buyer may reasonably request or require. Buyer's obtaining of extended coverage and of such endorsements reasonably requested or required by

Buyer shall not be a Condition of the Closing and of Buyer's obligation to close the Purchase and Sale Transaction.

**11.5** Representations Accurate. The representations and warranties of the parties contained in this Agreement will be true and accurate as of the Effective Date and as of the Closing Date.

**12.** **Closing**. Closing shall take place at the offices of Escrow Agent in Salt Lake City, Utah or at such other place as the parties may agree. Buyer agrees to a joint closing with Seller's acquisition of the Property and where Seller may utilize a portion of the Purchase Price to purchase the Property directly from a third party in a simultaneous closing. This arrangement has been fully disclosed to the Buyer and both Buyer and Seller acknowledge such utilization of funds as part of the joint closing.

**13.** **Charges**.

**13.1** Escrow Fees. The fees and charges of Escrow Agent shall be paid by Seller.

**13.2** Title Insurance. The premium for the Title Policy shall be paid by Seller. The costs of any endorsements required by Buyer and the cost of extended coverage title insurance (if elected by Buyer) shall be paid by Buyer.

**13.3** Legal Fees. Seller shall be responsible for payment of the fees and expenses of Seller's and Buyer's counsel, if any, relating to this Purchase and Sale Transaction.

**13.4** Deed Recording Fees. Recording fees for the Deed shall be paid by Seller.

**13.5** Other Closing Costs. Any other closing costs are to be shared equally by Buyer and Seller.

**14.** **Prorations**. Escrow Agent shall prorate costs (and said costs shall be borne by the parties) as follows:

**14.1** Taxes and Assessments. All ad valorem real and personal property taxes, water assessments and charges not paid by any tenant pursuant to a lease, and any special assessments which Buyer has agreed to assume shall be prorated as of the Closing Date. The net balance of the proration, if in favor of Seller, shall be added to the cash required to be delivered to Escrow Agent by Buyer or, if in favor of Buyer, shall be deducted from such cash required.

**14.2** Rents, Revenues, and Expenses. All other rents, revenues and expenses of the Property including, but not limited to, all costs associated with year-round cultivation of the crops and/or permanent plantings, which amounts shall be agreed to by Buyer and Seller prior to Closing, shall also be prorated as of the Closing Date.

**15.** **Closing Date**. Unless the Purchase and Sale Transaction is terminated prior to the Closing, pursuant to this Agreement, the closing date of the purchase and sale of the Property (the "**Closing Date**" or the "**Closing**") shall occur on August ___, 2021.

**16.    Real Estate Brokers and Agents**. Seller and Buyer each represent and warrant strictly for themselves that each has not dealt with any broker or finder in connection with the Purchase and Sale Transaction contemplated by this Agreement other than Colliers Utah and Green Ivy Realty, and insofar as each for themselves know, no other broker, agent, or other person is entitled to any commission or fee with respect to the Purchase and Sale Transaction. Seller is responsible for paying all real estate commissions under separate agreement. Further, each party shall indemnify, defend, and hold the other party harmless from and against any claim or loss incurred or suffered as a result of any agent's fee, broker's commission or finder's fee alleged to be payable because of any statement, act or omission of the indemnifying party.

**17.    Risk of Loss**. Except as otherwise specifically set forth herein, all risk of loss and destruction of the Property and improvements, and all Property expenses and insurance, shall be borne by Seller until the Closing Date.

**18.    Default**. Seller or Buyer shall be deemed to be in default hereunder upon the occurrence of any of the following and the failure to cure the same within five (5) days written notification of such default by the non-defaulting party:

    **18.1    Warranties and Representations**. Discovery by the non-defaulting party that any of the defaulting party's representations or warranties are untrue or incorrect in any material respect;

    **18.2    Failure of Delivery**. A party's failure to provide to Escrow Agent on or before the Closing Date all of the instruments, documents and/or cash to close as required by this Agreement; or

    **18.3    Failure to Comply with Other Terms and Obligations**. A party's failure to comply with any of the terms and obligations contained in this Agreement, and/or any other document or agreement between the parties.

**19.    Remedies**.

    **19.1    Buyer's Remedies**. If Seller defaults as provided in Section 19 of this Agreement ("**Seller's Default**"), Buyer shall give Seller written notice of such Seller's Default, and thereafter Seller shall have five (5) days to cure such Seller's Default (or such longer period if such is reasonably necessary in order to cure such Seller's Default, not to exceed thirty (30) days, and then only if Seller commences such cure within the five (5) business day period and thereafter diligently pursues the cure to completion). If Seller defaults and fails to cure Seller's Default within the cure period, as applicable, Buyer may elect one of the following remedies as Buyer's sole remedy for such Seller's Default: (i) waive the effect of the Seller's Default and proceed to consummate the Purchase and Sale Transaction; (ii) terminate this Agreement, whereupon all funds and documents delivered shall be returned to Buyer. Thereafter neither Buyer nor Seller shall have any further right, liability, duty or obligation under this Agreement, except for agreements or covenants that specifically survive termination; or (iii) bring an action for specific performance of this Agreement. All rights and remedies contained in this Section 19.1 shall be non-cumulative and exclusive.

    **19.2    Seller's Remedies**. If Buyer defaults as provided in Section 19 of this Agreement ("**Buyer's Default**"), Seller shall give Buyer written notice of such Buyer's Default, and thereafter

DocuSign Envelope ID: 7E0BD496-AC24-43E8-B5DA-472F99C4D103

Buyer shall have five (5) days to cure such Buyer's Default (or such longer period if such is reasonably necessary in order to cure such Buyer's Default, not to exceed thirty (30) days, and then only if Buyer commences such cure within the initial five (5) business day period and thereafter diligently pursues the cure to completion). If Buyer defaults, or defaults and fails to timely cure Buyer's Default within the cure period, as applicable, and escrow shall fail to close as a result of such Buyer's Default, Seller may elect one of the following as Seller's sole remedy for such Buyer's Default: (i) Seller may waive the effect of the Buyer's Default and proceed to consummate the Purchase and Sale Transaction; (ii) Seller may terminate this Agreement, in which event, Escrow Agent shall return all documents delivered by Seller to Seller. All rights and remedies contained in this Section 20.2 shall be non-cumulative and exclusive. In no event shall Seller be entitled to any punitive, special, or consequential damages.

**20.** **Notices**. All notices, requests, demands, and other communications hereunder shall be in writing and shall be given by (i) established express delivery service which maintains delivery records, (ii) hand delivery, or (iii) certified or registered mail, postage prepaid, return receipt requested, to the parties at the addresses set forth below, or at such other address as the parties may designate by written notice in the above manner. Notices and other communications may also be given by electronic mail, provided the sender receives verification of receipt. Notices are effective upon receipt, or upon attempted delivery if delivery is refused or if delivery is impossible because of failure to provide a reasonable means for accomplishing delivery.

If to Buyer:      9070 South Blackjack Road
                  Alta, Utah 84092

If to Seller:     Millrock Investment Fund 1, LLC
                  2100 Pleasant Grove Blvd, Suite 200
                  Pleasant Grove, UT 84062

If to Escrow Agent:   Old Republic Title Insurance Agency
                      _____
                      _____
                      Attn: Forest Anthony, Escrow Officer

Either party may, by giving notice pursuant hereto, change the information set forth above.

**21.** **1031 Exchange**. It is intended that the sale of this property from Buyer to Seller is the "replacement property" as part of Buyer's like-kind exchange pursuant to IRC §1031 (the "Exchange"). Buyer and Seller agree to cooperate one with another in completing the Exchange.

**22.** **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

DocuSign Envelope ID: 7E0BD496-AC24-43E8-B5DA-472F99C4D103

23. **Governing Law; Venue**. This Agreement shall be enforced and construed in accordance with the laws of the State, without reference to the conflict of law rules of the State. Venue for any legal action or proceedings commenced by a party shall be in the State or Federal courts located in Utah County, State of Utah.

24. **Integration; Amendment in Writing**. This Agreement constitutes the entire agreement of the parties. All prior understandings and agreements between the parties are merged in this Agreement, which fully and completely expresses their understanding. This Agreement may not be amended or modified by any act or conduct of the parties or orally in any respect, unless the amendment or modification is reduced to writing and executed by Seller and Buyer.

25. **No Merger**. Neither the occurrence of the Closing nor the execution or delivery of the various documents as contemplated hereby shall result in the termination or extinguishment of this Agreement or the merger of this Agreement into such documents. Buyer and Seller expressly agree and intend that this Agreement, the representations and warranties contained herein and in the attached Exhibits, and each and every other provision hereof shall survive the delivery of the documents and the Closing for the period of such survival set forth in this Agreement.

26. **Costs and Attorneys' Fees**. If either party brings or commences a legal proceeding to enforce any of the terms of this Agreement, the prevailing party in such action shall have the right to recover reasonable attorneys' fees and all other associated costs from the other party, to be fixed by the court in the same action. The term "legal proceedings" shall include appeals from a lower court judgment and bankruptcy proceedings. The "prevailing party" means the party who substantially obtains the relief sought.

27. **Severability**. If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid and unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those to which it is invalid and unenforceable, shall not be affected thereby, and such term or provision of this Agreement shall be valid and shall be enforced to the extent permitted by law.

28. **No Third-Party Beneficiaries**. There is no intent by Buyer or Seller to create or establish third party beneficiary status or rights in any third party. This Agreement shall not be deemed to confer any rights upon any person or entity which is not a party hereto, and Buyer and Seller expressly disclaim any such third-party benefit.

29. **Time of the Essence**. Time is of the essence of this Agreement; however the specified times for performance of the parties and the actions to be taken by Escrow Agent shall be extended or modified as reasonably necessary in order to accomplish the purposes and intentions of this Agreement. If any deadline falls on a Saturday, Sunday or nationally recognized holiday, the deadline shall be the next business day.

30. **Counterparts; Signatures**. The parties may sign this Agreement in multiple identical counterparts, all of which taken together shall constitute one and the same agreement. Further, the parties shall treat a copy of an original signature to this Agreement that they transmit electronically for all purposes as an original signature. The parties shall consider a copy of the signed Agreement for all purposes as an original of the Agreement to the maximum extent permitted by law, and no

party shall have any obligation to retain a version of this Agreement that contains original signatures in order to enforce this Agreement, or for any other purpose.

**31.    Exhibits and Recitals**. All Exhibits referred to in this Agreement or which are attached hereto, and the Recitals set forth above are specifically incorporated into this Agreement by reference.

**32.    Confidentiality**. Buyer and Seller acknowledge and agree that the parties do not desire any publicity with respect to this Purchase and Sale Transaction, and therefore each party hereto agrees, for itself and its employees, contractors and agents (including specifically real estate brokers and agents), that no publication of this Purchase and Sale Transaction shall be made and no information with respect to this Purchase and Sale Transaction shall be given to any media.

**33.    No Joint Venture**. Nothing herein is intended to create or shall create a joint venture, association, or partnership between Buyer and Seller. Instead, the parties acknowledge that this Agreement is solely for the purchase and sale of real property.

[Signatures on following page]

DocuSign Envelope ID: 7E0BD496-AC24-43E8-B5DA-472F99C4D103

IN WITNESS WHEREOF the parties have caused this Agreement to be signed as of the Effective Date.

| SELLER: | BUYER: |
|---|---|
| **MILLROCK INVESTMENT FUND 1, LLC**<br>A Utah limited liability company | **GOLDSMITH PROPERTIES, LLC**<br>a Utah limited liability company |//

*DocuSigned by:*
*Kevin G. Long*
KEVIN LONG
MANAGER

*DocuSigned by:*
*Douglas Goldsmith*
DOUGLAS GOLDSMITH
MANAGER

## ACCEPTANCE OF ESCROW AGENT

Escrow Agent hereby accepts this Agreement, agrees to act as Escrow Agent hereunder, and agrees to be bound by the terms and conditions of this Agreement pertaining to Escrow Agent and to perform Escrow Agent's duties and responsibilities as set forth in this Agreement.

ESCROW AGENT: Forest Anthony

By: *Forest Anthony* (DocuSigned by: 0A5779177061442...)

**EXHIBIT A**
**TO**
**PURCHASE AND SALE AGREEMENT**

<u>Legal Description</u>

A tract of land, situated in the Chickasawba District of Mississippi County, Arkansas, and more particularly described as follows:

A part of Lot Two (2) of the J. B. Clark Subdivision of the Northeast Quarter (NE1/4) of the Southwest Quarter (SW1/4) of Section Twenty Eight (28), Township Fifteen (15) North, Range Eleven (11) East, said subdivision being as recorded in Plat Book One (1), Page 107, Mississippi County Records, Blytheville, Arkansas, said part of Lot Two (2) being more particularly described as follows: Beginning at the Northeast (NE) corner of said Lot Two (2), thence South (S) 00 degrees 27 minutes 34 seconds East (E), along the West (W) Right-of-Way of Highway #61, a distance of 269.85 feet to a point, thence leaving said Right-of-Way, North (N) 90 degrees 00 minutes 00 seconds West (W), a distance of 581.09 feet to a point, thence North (N) 00 degrees 27 minutes 34 seconds West (W) a distance of 269.85 feet to a point, thence South (S) 90 degrees 00 minutes 00 seconds East (E), a distance of 581.09 feet to a point, said point being the POINT OF BEGINNING, said tract containing 3.60 acres, and being subject to easements and rights-of-way for roads and other purposes.

Commonly known as: 3327 South Division Street, Blytheville, Arkansas.

14

DocuSign Envelope ID: 7E0BD496-AC24-43E8-B5DA-472F99C4D103

## EXHIBIT B

**THE NOTE**

*See Attached*