Matthew A. Steward (#7637)
Keith M. Woodwell (#7353)
Katherine E. Pepin (#16925)
Clyde Snow & Sessions
201 South Main Street, Suite 2200
Salt Lake City, Utah 84111
Tele./Fax: (801) 322-2516
mas@clydesnow.com
kmw@clydesnow.com
kep@clydesnow.com

*Attorneys for Defendants Mark Machlis and Green Ivy Realty, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DOUGLAS GOLDSMITH, an individual; and GOLDSMITH PROPERTIES, LLC, a Utah limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>KEVIN G. LONG, an individual; MILLCREEK COMMERCIAL PROPERTIES, LLC, a Utah limited liability company; MILLROCK BLYTHEVILLE, LLC, a Utah limited liability company; MILLROCK INVESTMENT FUND 1, LLC, a Utah limited liability company; COLLIERS INTERNATIONAL, a Utah company; MARK MACHLIS, an individual; and GREEN IVY REALTY, INC., a Utah corporation,<br><br>Defendants. | **DEFENDANTS MARK MACHLIS AND GREEN IVY REALTY, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br><br>Case No. 2:24-cv-00499-AMA-CMR<br><br>Judge Ann Marie McIff Allen<br>Magistrate Judge Cecilia M. Romero |

{02331498-4 }

Pursuant to DUCivR 7-1 and Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), Defendants Mark Machlis ("**Machlis**") and Green Ivy Realty, Inc. ("**Green Ivy Realty**") submit this Motion to Dismiss the Second Amended Complaint (this "**Motion**") filed by Plaintiffs Douglas Goldsmith ("**Goldsmith**") and Goldsmith Properties, LLC ("**Goldsmith Properties**") (collectively, "**Plaintiffs**").

## RELIEF SOUGHT AND GROUNDS

In the Second Amended Complaint (the "**SAC**"), Plaintiffs have asserted five causes of action against the Machlis Defendants, but only the first cause of action arises under federal law: alleged securities fraud in violation of the Exchange Act. However, despite being given a third opportunity to correct the deficiencies in their pleadings, Plaintiffs have yet again failed to adequately plead that the transaction at issue involves the offer, purchase, or sale of a security.

Plaintiffs purchased the Blytheville Property in fee-simple and subsequently leased the Property back to Millrock Blytheville, LLC ("**Millrock Blytheville**") in a standard commercial lease agreement. The fact that Millrock Blytheville is responsible for the management and lease of the Blytheville Property does not transform Plaintiffs' interest in the Blytheville Property into a security. Similarly, the fact that the parties agreed and understood that Plaintiffs' interest in the Blytheville Property might later be transformed from fee-simple ownership into a security if additional investors were identified does not make the transaction or Plaintiffs' interest in the Blytheville Property a security now. It is undisputed that Goldsmith purchased the Blytheville Property in fee-simple and immediately leased the Blytheville Property back to Millrock Blytheville, a standard sale and leaseback transaction that is not a security. To date, Plaintiffs' ownership interest in the Blytheville Property and the landlord/tenant relationship with Millrock

4907-6678-6663, v. 4

Blytheville remains unchanged. Thus, the transaction at issue in the Second Amended Complaint does not involve the offer, purchase, or sale of a security and Plaintiffs' claim for securities fraud under the Exchange Act should be dismissed.

All remaining causes of action in the Second Amended Complaint arise under state common law. Once the securities fraud claim brought under the Exchange Act is dismissed, the Court should decline to exercise supplemental jurisdiction over these claims.

Based on the foregoing, Mark Machlis and Green Ivy Realty respectfully request that Plaintiffs' first cause of action for violations of the Exchange Act be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), and that the remaining state law claims be dismissed for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## STATEMENT OF RELEVANT FACTS

1. Plaintiffs did not purchase a TIC interest in the Blytheville Property; instead, Plaintiffs purchased a fee-simple interest.[1]

2. Plaintiffs purchased the Blytheville Property and, "[a]t closing on August 6, 2021," executed a "long-term lease (the "**Lease**") with Millrock Blytheville."[2]

---

[1] *See* Warranty Deed, attached hereto as Exhibit A. The Court may consider this Warranty Deed because the sale of the Blytheville Property, and therefore the corresponding Warranty Deed, is "central to the plaintiff's claim." *See Smith v. U.S.*, 561 F. 3d 1090, 1098 (10th Cir. 2009).
[2] *See* SAC, ECF No. 99, at ¶ 61; *see* Lease Agreement, attached hereto as Exhibit B. Like the Warranty Deed, the Court may consider the Lease Agreement because it is repeatedly referenced in the SAC and is "central to the plaintiff's claim." *Smith*, 561 F.3d at 1098.

3. Under the Lease, Millrock Blytheville is obligated to pay fixed rent payments to Plaintiffs "of $14,447.92 during a construction period of up to two years then escalating to $17,094.77."[3]

4. The Lease does not require Millrock Blytheville to pay Plaintiffs any payment related to Millrock Blytheville's improvements upon the Blytheville Property or profits from managing the Blytheville Property.[4]

5. The Lease states "Landlord [Plaintiffs] desires to retain fee ownership of the real property and to lease to Tenant the Property together with all of the currently existing improvements upon the Property."[5]

6. Under the Lease, Millrock Blytheville is obligated to maintain and operate the Blytheville Property, and Plaintiffs are not required to perform any service for the improvement or repair of the Property:

> Landlord [Plaintiffs] and Tenant [Millrock Blytheville] agree that the payment of Rent hereunder shall be absolutely net to the Landlord [Plaintiffs] and that the Tenant [Millrock Blytheville] shall: i) be have a duty to maintain and operate all aspects of the Leased Premises, including walls, roof and foundation in a condition similar to first class medical or other similar facilities located in the region; and, ii) pay all expenses necessary to construct, improve and maintain the Leased Premises in accordance with that standard as determined in the reasonable discretion of the Landlord [Plaintiffs].[6]

7. Under the Lease, Plaintiffs have the right "at any time after January 1, 2023 but during the Initial Term of the Lease … to contribute the Property to the Tenant [Millrock

---

[3] *See* SAC, ECF No. 99, at ¶ 61.
[4] See Lease.
[5] *See* Lease, Ex. B, at Recital (B), p. 1.
[6] *See* Lease, Ex. B, at § 7(a); *see also* SAC, ECF No. 99, at ¶ 63.

Blytheville] and convert its fee interest in the Property to a percentage membership interest in the Tenant [Millrock Blytheville] as determined below (the "**Conversion Right**")."[7]

8. The SAC does not allege that Plaintiffs ever exercised this Conversion Right.

## ARGUMENT

I. **LEGAL STANDARD**

A. **Rule 12(b)(6) Failure to State a Claim**

When deciding a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, a court "accept[s] as true all well-pleaded factual allegations … and view[s] these allegations in the light most favorable to the plaintiff."[8] A complaint "cannot rely on labels or conclusory allegations–a 'formulaic recitation of the elements of a cause of action will not do.'"[9] "Rather, [the] complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"[10]

B. **Rule 12(b)(1) Lack of Subject-Matter Jurisdiction**

Under Fed. R. Civ. P. 12(b)(1), a court can dismiss a complaint for "lack of subject matter jurisdiction." A federal court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."[11] Additionally, a federal court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of

---

[7] *See* Lease, Ex. B, at § 2.5.
[8] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).
[9] *Greer v. Moon*, 83 F.4th 1283, 1292 (10th Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[10] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[11] 28 U.S.C. § 1331.

the United States Constitution."[12] However, the court "may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction[.]"[13] The Tenth Circuit has recognized that, "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.'"[14]

Whether a federal court has jurisdiction of the action "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations or jurisdiction."[15] "A party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper."[16]

## II. PLAINTIFFS HAVE FAILED TO PLEAD THAT THE TRANSACTION AT ISSUE INVOLVES A SECURITY UNDER FEDERAL SECURITIES LAWS

Plaintiffs' purchase of the Blytheville Property from Millrock Blytheville, even when coupled with the long-term, triple net Lease wherein Millrock Blytheville agreed to manage and maintain the Property, does not involve the offer, purchase, or sale of a "security" within the meaning of the Securities Act of 1933 (the "**Securities Act**") and the Securities and Exchange Act of 1934 (the "**Exchange Act**"). The Securities Act defines a "security" as follows:

> The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation of any profit-sharing agreement, collateral-trust certificate, preorganization, certificate or subscription, transferable share, ***investment contract***, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or

---

[12] 28 U.S.C. § 1367(a).
[13] 28 U.S.C. § 1367(c)(3).
[14] *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n,* 149 F.3d 1151, 1157 (10th Cir. 1998)).
[15] *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).
[16] *Michelson v. Enrich Intern, Inc.*, 6 Fed. Appx. 712, 716 (10th Cir. 2001).

other mineral rights, or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.[17]

In *S.E.C. v. W.J. Howey Co.*, the United States Supreme Court used a four-part test to define an investment contract as a security for purposes of the Securities Act.[18] Under the *Howey* test, an investment contract involves: (1) an investment of money; (2) in a common enterprise; (3) with an expectation of profit; (4) derived solely from the efforts of others.[19] In the SAC, Plaintiffs have failed to adequately allege both the "common enterprise" and the "expectation of profit solely from the efforts of others" prongs of the *Howey* test.

    A.    **There Is No Common Enterprise**

This Court has defined a "common enterprise" as "'one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investments or of third parties.'"[20] It is undisputed that, at the time the Blytheville Property was sold to Plaintiffs and Plaintiffs and Millrock Blytheville executed the Lease, Plaintiffs were the sole investor.[21] To date, Plaintiffs do not share the risk or reward of the property with any other members of a collective enterprise because they remain the sole investor in the Blytheville Property. Thus, there is no horizontal commonality.[22]

---

[17] 15 U.S.C. 77(b)(1) (emphasis added).
[18] *See S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946).
[19] *Id.*
[20] *Walsh v. International Precious Metals Corp.*, 510 F. Supp. 867, 872 (D. Utah 1981).
[21] *See* SOF ¶¶ 1, 5.
[22] *Walsh*, 510 F. Supp. at 872.

Additionally, there is no vertical commonality because the fortunes of Plaintiffs are not "interwoven with and dependent upon the efforts and success of" Millrock Blytheville. Under the terms of the Lease, regardless of Millrock Blytheville's performance or efforts, the Landlord— whether that be just Plaintiffs or a combination of Plaintiffs and other investors—is only entitled to the Fixed Rent payments. Plaintiffs' fortunes on this venture are fixed and independent of Millrock Blytheville's efforts.

In *Alamaden Plaza Associates v. United Trust Fund Ltd. Partnership*, Plaintiff entered into a sale-leaseback transaction wherein it purchased an office building and agreed to lease it back to the sellers with a 15-year "absolute net" lease at above-market rent. 860 P.2d 289, 290 (Ore. Ct. App. 1993). Plaintiff agreed to pay $25 million for the office building, even though the appraised market value was $18,650,000. *Id*. at 289–90. The agreement also gave the sellers/lessees five consecutive five-year options and the option to purchase the building at the end of the initial term or any extension. *Id*. at 290. Subsequently, the sellers/lessees went into receivership and ceased making rental payments, and Plaintiff lost the building to foreclosure. *Id*. Plaintiff filed suit for, among other claims, violations of Oregon and federal securities laws, and Defendants moved for partial summary judgment on the ground that the sale-leaseback package was not a security. *Id*. The Court held that the sale-leaseback package was not a security under the *Howey* test because there was no common enterprise. *Id*. at 292. The Court reasoned:

> Plaintiff is the sole investor. The fixed-rent lease does not include any conditions to payment, and any change in the value of the property at the end of the lease term will not be shared between plaintiff and First Farwest. There simply is no intertwining of profits and losses between the promoter and investor, and therefore no common enterprise.

*Id*. at 293–93. Thus, the Court held that the sale-leaseback package was not a security under either federal or Oregon law. *Id*. at 293.

Like the transaction in *Almadan Plaza*, at the time the Blytheville Property was sold and the parties executed the Lease, Goldsmith was the sole investor.[23] The fact that Millrock Blytheville may—but is not required to—locate additional investors, after which Plaintiffs shall have the right—but, again, are not obligated to—transform their interest in the Property into an ownership interest in Millrock Blytheville, does not presently transform the transaction into a security.[24] Additionally, the Fixed Rent in the Lease does not include any conditions to payment.[25]

While Plaintiffs reference an Operating Agreement, Plaintiffs have failed to adequately plead the contents of the agreement such that any Defendant or this court can determine whether the terms of the Operating Agreement create an expectation of profits derived solely from the efforts of others. Similarly, the fact that Millcreek Commercial actively markets TIC interests in commercial real estate, or that Millcreek Commercial and Plaintiffs discussed the future opportunity for Plaintiffs to convert their fee-simple ownership of the Property into a membership interest in Millrock Blytheville, does not mean the transaction at issue here involved a security. The fact that Plaintiffs either delegated property management duties or chose to rely on Millrock Blytheville does not establish dependency sufficient to constitute a common enterprise. *See, e.g.*, *Alumni v. Development Resources Group, LLC*, 445 Fed. Appx. 288, 297–98 (11th Cir. 2011).

---

[23] *See* SOF ¶¶ 1, 5, 8.
[24] *See* SOF ¶ 7.
[25] *See* SOF ¶ 3.

4907-6678-6663, v. 4

B.   **There Is No Expectation of Profits to Be Derived Solely from the Efforts of Others**

Plaintiffs have no expectation of profits to be derived solely from the efforts of others, even though Plaintiffs leased the Blytheville Property to Millrock Blytheville for it to manage under a long-term, triple net lease. Instead, the only return on investment promised to Plaintiffs is Millrock Blytheville's fixed rental payments, which is not derived from Millrock Blytheville's managerial expertise. Indeed, "[e]very lessor, in some measure, is reliant upon his commercial lessee's ability to manage the business profitably; however, such reliance will not render every commercial lease a security." *See Elson v. Geiger*, 506 F. Supp. 238, 243 (E.D. Mich. 1980).

The sale and leaseback of the Blytheville Property described in the SAC is commonly referred to as a "sale and leaseback" transaction, which other Courts have held are not, without more, a security or investment contract under the *Howey* test. For example, in *Elson v. Geiger*, the Plaintiff participated in three sale and leaseback arrangements, wherein Plaintiff purchased gas stations and then executed leases thereon to the seller corporation, which subsequently filed for bankruptcy. *Id*. at 240. Plaintiff filed suit against the seller and claimed that these transactions—in addition to several other related transactions—were securities. *Id*. The Court disagreed. *Id*. at 243. Conducting an investment contract analysis under *Howey*, the Court reasoned:

> The return on investment that had been promised to the purchasers was the lessee's fixed rent payment, which was totally independent of its profits or managerial expertise. Although the Plaintiffs argued that seller-lessee's managerial ability was requisite to a continuation of the timely rental payments, this contention alone does not meet the Howey test. Every lessor, in some measure, is reliant upon his commercial lessee's ability to manage the business profitably; however, such reliance will not render every commercial lease a

> security. ***Furthermore, the fact that the lessor negotiated a net lease is also not dispositive***.
>
> [ . . . ]
>
> Applying Howey, the court finds that no securities were involved in either set of transactions. As the Supreme Court stated in <u>International Brotherhood of Teamsters v. Daniel</u>, 439 U.S. 551, 558, 99 S.Ct. 790, 795, 58 L.Ed.2d 808 (1979), the term "investment contract" does not embrace every commercial transaction where lenders or purchasers have been defrauded or misled. Although the term may be flexible, <u>Canadian Imperial Bank of Commerce Trust Co. v. Fingland</u>, 615 F.2d 465 (7th Cir. 1980), Congress did not intend to open the federal courts to every alleged commercial fraud, <u>United Sportfishers v. Buffo</u>, 597 F.2d 658 (9th Cir. 1978).

*Id*. at 242–43 (emphasis added). Like the Plaintiff in *Elson*, Goldsmith selected and purchased the Blytheville Property in fee-simple.[26] He then executed a lease agreement with Millrock Blytheville in which Millrock Blytheville agreed to lease the Blytheville Property in exchange for monthly lease payments.[27] Goldsmith is not entitled to a share of the profits of either Millrock Blytheville or any sub-tenant Millrock Blytheville may or may not be able to find; he is merely entitled to monthly rental payments from Millrock Blytheville.[28] In other words, the only return on investment promised to Goldsmith was the fixed lease payments, payable by Millrock Blytheville regardless of Millrock Blytheville's ability to successfully manage the Blytheville Property. Goldsmith is indistinguishable from any other commercial landlord and does not warrant the special protection offered by the Securities Act or Securities Exchange Act.

---

[26] *See* SOF ¶ 1.
[27] *See* SOF ¶¶ 2–3.
[28] *See* SOF ¶ 3–4.

Based on the foregoing, Plaintiffs' purchase of the Blytheville Property did not involve the purchase or sale of a security. As such, Plaintiffs' have failed to allege a claim for securities fraud against Machlis and Green Ivy Realty.

### III. PLAINTIFFS STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

According to the SAC, Plaintiffs brought the action pursuant to federal question jurisdiction for securities claims.[29] However, as explained in Section II, *supra*, Plaintiffs' securities-related cause of action requires allegations of a security, which Plaintiffs have failed to satisfy in the SAC. Thus, Plaintiffs' securities-related cause of action must be dismissed for failure to state a claim upon which relief can be granted. Once that claim is dismissed, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss this action in its entirety for lack of subject-matter jurisdiction.[30]

### CONCLUSION

Based on the foregoing, the federal securities-based cause of action asserted against Machlis and Green Ivy Realty in the SAC should be dismissed for failure to state a claim upon which relief can be granted, and the remaining state law causes of action should be dismissed for lack of subject-matter jurisdiction.

---

[29] *See* SAC, ECF 99, ¶ 32.
[30] 28 U.S.C. § 1367(c)(3); *see also Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1157 (10th Cir. 1998)).

4907-6678-6663, v. 4

DATED this 19th day of September, 2025.

                                                     CLYDE SNOW & SESSIONS

                                                     */s/ Katherine E. Pepin*
                                                     Matthew A. Steward
                                                     Keith M. Woodwell
                                                     Katherine E. Pepin

                                                     *Attorneys for Defendants Mark Machlis and Green Ivy Realty, Inc.*

4907-6678-6663, v. 4

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of September, 2025, I electronically filed the foregoing **DEFENDANTS MARK MACHLIS AND GREEN IVY REALTY, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all parties of record.

*/s/ Doug Layne*
Legal Assistant

4907-6678-6663, v. 4