# EXHIBIT B

(Lease Agreement)

# LEASE AGREEMENT

THIS LEASE AGREEMENT (this "**Lease Agreement**") is entered into effective as of the ___ day of July, 2021 (the "**Effective Date**"), between GOLDSMITH PROPERTIES, LLC, a Utah limited liability company (together with its successors and/or assigns, "**Landlord**"), and MILLROCK BLYTHEVILLE, LLC, a Utah limited liability company (together with its successors and/or assigns, "**Tenant**").

## RECITALS

A. Landlord is the owner of that certain real property located in Blytheville, Arkansas, more particularly described in Exhibit "A" attached hereto and made a part hereof, together with all improvements located thereon (collectively, the "**Property**").

B. Landlord desires to retain fee ownership of the real property and to lease to Tenant the Property together with all of the currently existing improvements upon the Property.

C. Tenant desires to lease the Property and all currently existing improvements to the Property from the Landlord subject to the terms and conditions of this Lease Agreement.

C. In addition to the leasehold improvements previously constructed and installed upon the Property prior to the Effective Date ("**Prior Improvements**"), Tenant desires to construct further leasehold improvements on the Property ("**Subsequent Improvements**") in accordance with the terms and conditions of this Lease Agreement. Except as specifically provided otherwise herein; i) the Property and the Prior Improvements shall be and remain the sole property of the Landlord subject to this Lease Agreement; and ii), and the Subsequent Improvements and the Tenant's leasehold interest in the Property and the Prior Improvements shall be the sole property of the Tenant subject to this Lease Agreement.

## AGREEMENT

NOW THEREFORE, in consideration of the rents, covenants and agreements set forth herein, the receipt and legal sufficiency of which is hereby acknowledged. Landlord and Tenant enter into this Lease and agree as follows:

1. <u>Leased Premises</u>. Landlord hereby demises, leases and lets unto Tenant the Property, and the Prior Improvements to the extent the Landlord has any interest therein (collectively the "**Leased Premises**"). In so doing, it is the parties' intention to confer all the benefits and burdens associated with the Leased Premises upon the Tenant.

2. <u>Term and Option to Renew</u>.

    2.1 <u>Initial Term</u>. The initial term of this Lease shall be for a period of twenty (20) years (the "**Initial Term**") and shall commence as of the Effective Date (the "**Commencement Date**") and end on the last day of the month immediately preceding the 20th anniversary of the Commencement Date (presumably July 31, 2041).

{00568544.DOCX /}  1

    2.2 <u>Extension Options</u>.  Tenant shall have eight (8), ten-year options to extend the Initial Term of the Lease (the "**Options**") for a total extension period, assuming all nine options are exercised, of ninety (90) additional years beyond the Initial Term. For purposes of this Agreement, each option period shall be individually referenced as an "**Extension Term**".  Tenant shall be deemed to have timely exercised each of Tenant's Options unless Tenant notifies Landlord, in writing, of its intention **not to exercise** the next Option not later than sixty (60) days prior to the end of the Initial Term or preceding Extension Term, as the case may be.  Each Extension Term shall commence immediately upon the expiration date of the Initial Term or the previous Extension Term, as the case may be.  All terms, conditions and provisions of this Lease Agreement shall apply to the Initial Term and each Extension Term.

    2.3 <u>Lease Term</u>.  The Initial Term and each Extension Term, if any, are hereinafter collectively referred to as the "**Term**."

    2.4 <u>Holdover</u>.  In the event Tenant remains in possession of the Leased Premises after the expiration of the Term and without the execution of a new lease, Tenant shall be deemed to be occupying the Leased Premises as a tenant from month-to-month, and shall be subject to all other conditions, provisions and obligations of this Lease insofar as the same can be applicable to a month-to-month tenancy, except that Fixed Rent shall be 125% of the amount set forth in Section 3 below.

    2.5 <u>Landlord's Right to Contribute Property to the Tenant.</u>  Subject to the provisions of this section, at any time after January 1, 2023 but during the Initial Term of the Lease, Landlord shall have the right to contribute the Property to the Tenant and convert its fee interest in the Property to a percentage membership interest in the Tenant as determined below (the "Conversion Right").  Notwithstanding any other provision of this Lease Agreement to the contrary, nothing in this Lease Agreement shall diminish, waive or discharge either Landlord's or Tenant's right and obligations under the Conversion Right, including but not limited to the any permitted leasehold mortgagee's right to foreclose, cure a default, extend or require the Landlord or Tenant to enter into a new lease agreement.  Any actions required of the Landlord shall be strictly contingent upon the leasehold mortgagee attorning to, and assuming the duties and obligations of the Tenant under this Lease, and specifically under this Conversion Right.  The contribution of the Landlord's interest in the Property to Tenant shall be made pursuant to §721 of the Internal Revenue Code by the Landlord executing and delivering a special warranty deed or its equivalent for the State of Arkansas to the Property to the Tenant.  The Property shall only be subject to existing encumbrances of record imposed by the Landlord as of the Effective Date and any encumbrances which may be imposed by the Tenant subsequent to the Effective Date.  The parties shall execute and deliver such other documents and deeds necessary to convey the Property to the Company in a manner consistent with this Agreement.  Tenant represents and warrants that a true, correct and current copy of the Tenant's Operating Agreement has been previously provided to and accepted by the Landlord ("Tenant's Operating Agreement") and that the Tenant's Operating Agreement shall not be amended or restated prior to the Landlord's exercise of its Conversion Right without preserving the value of the Landlord's Conversion Right and without the Landlord's prior written consent which shall not be unreasonably withheld.  Landlord recognizes that Tenant may grant similar conversion rights to other parties having an interest in the Property provided the granting such other conversion rights does not diminish, dilute or compromise in any way the Conversion Right, the value of the Conversion Right as reflected in

the ownership of the Tenant granted to Landlord hereunder or modify the Tenant's Operating Agreement except as permitted herein. Landlord and Tenant agree to accept the Membership Interests issued pursuant to the Conversion Right subject to the terms and conditions of the Operating Agreement

(a) <u>Conversion Calculation.</u> The membership interest in the Tenant that Landlord will receive by exercising its Conversion Right shall equal a fraction, the numerator of which shall equal $2,829,478.81 (the agreed upon value of Landlord's fee interest in the Property) plus any additional capital that Landlord may contribute to the Tenant at or before the time the Conversion Right is exercised and the denominator of which equals the summation of all Tenant's members' cash and property capital contributions to the Tenant. The value of intangible development fees, contractual rights, commissions and similar intangibles will not be included in such calculation over and above the financial contributions. By way of illustration but not limitation, if Landlord contributes the Property (and no other contribution) with an agreed upon value of $2,829,478.81 and Tenant and others contribute cash and property equal to $8,488,436.43 for a total capital contribution of $11,317,915.24, Landlord would be entitled to a $2,829,478.81 / $11,317,915.24 or 25% Membership Interest in the Tenant.

(b) <u>Capital Account Adjustments.</u> The conversion and contribution of the Property by the Landlord to the Tenant shall constitute a capital contribution to the Tenant. As such the capital account of the Landlord shall increase by the agreed upon value of the Property and any additional capital contribution by the Landlord and the capital accounts and percentage ownership membership interests of all members of the Tenant shall be adjusted appropriately.

3. <u>Rent and Other Payments</u>.

3.1 <u>Initial Fixed Rent</u>. Though out the Initial Term of this Lease, commencing on the 1st day of the month immediately preceding the Effective Date (the "**Rental Commencement Date**") and on the first day month following the Rental Commencement Date throughout the Construction Period (defined hereafter) Tenant shall pay to Landlord the annual and monthly rent set forth below ("**Construction Period Rent**"). Following the Construction Period and throughout the remainder of the Initial Term, Tenant shall pay to Landlord the annual and monthly rent set forth below (the "Post **Construction Period Rent**").

| Period | Monthly Rent | Annual Rent |
|---|---|---|
| Construction Period | $14,447.92 | $173,375.04 |
| Post Construction Period | $17,094.77 | $205,137.21 |

{00568544.DOCX /}                                3

The Construction Period Rent and the Post Construction Period Rent shall be collectively referred to as the "**Fixed Rent**". The Construction Period shall be the period beginning with the Rental Commencement Date and concluding on the earlier of: i) at issuance of CO; or, ii) July 1, 2023. The Post Construction Period shall be the remainder of the Initial Term after the Construction Period has expired. Tenant shall keep Landlord abreast of the progress and status of the installation tenants improvements upon Tenant's leasehold estate. Except as provided in paragraph 3.3 below, the Fixed Rent shall be paid in advance on or before the tenth day of each anniversary of the Rental Commencement Date. Tenant shall pay a proportionate amount of rent for the Lease Term between the Effective Day and the Rental Commencement Date. The Fixed Rent shall be delivered to Landlord at the address provided in Section 20, or at such other address as Landlord may specify in writing to Tenant.

   3.2 <u>Rent</u>. The term "Rent" means the aggregate of Fixed Rent and Additional Rent. "**Additional Rent**" means any and all amounts payable by Tenant to Landlord under the terms of this Lease, other than Fixed Rent.

   4. <u>Leased Premises Accepted "As-Is"</u>. Tenant accepts the Leased Premises "as-is" without warranty or representation of any kind except as expressly set forth in this Lease Agreement. Landlord has provided Tenant with reasonable opportunities to conduct any inspections Tenant deemed appropriate to evaluate the Leased Premises and to determine the suitability of the Leased Premises for Tenant's purposes, including, without limitation, determining whether there are any Hazardous Materials (as defined in Section 10.3 below) on or under the Leased Premises, determining whether the Leased Premises has sufficient access and determining whether all needed utilities and services will be available.

   5. <u>Use and Improvements</u>.

   5.1 <u>Use</u>. The Leased Premises may be used for any lawful purposes including but not limited to the construction of additional improvements upon the Leased Premises, the leasing, subleasing, encumbering or alteration of the Leased Premises as determined by Tenant in its sole and absolute discretion.

   5.2 <u>Alterations and Improvements</u>. Tenant shall be fully entitled to, at its sole cost and expense to make any and all changes, additions, improvements or repairs to the Leased Premises (including, without limitation, the construction of new buildings and facilities and the installation of any fixture or equipment, or the addition of any pipe, line, wire, conduit or related facility for water, electricity, natural gas, telephone, sewer or other utility) without Landlord's prior written consent provided such change, addition, improvement or repair (the "Subsequent Improvements") (a) utilizes only new and first grade materials, (b) is in conformity with all applicable laws, ordinances, regulations and requirements, (c) is made after obtaining any required permits and licenses, and (d) will not limit the use and operation of the Landlord, or its affiliates use of its neighboring property. Further, Tenant shall be entitled to remove, demolish, abandon, modify or alter any of the Prior Improvements or Subsequent Improvements as it shall determine at any time during the Term. Any such change, addition, improvement or repair shall be the property of the Tenant subject only to the terms and conditions of this Lease. Tenant shall promptly pay the entire cost of any such change, addition, improvement or repair. Tenant shall

indemnify, defend and hold Landlord harmless from and against all liens, claims, damages, losses, liabilities and expenses, including attorneys' fees, that may arise out of, or be connected in any way with, any such change, addition, improvement or repair. Subject to the payment of Rent and other obligations provided under this Lease, Tenant shall be entitled to receive all rents, profits and benefits derived from the use and operation of the Leased Premises including those derived from the Subsequent Improvements and shall be entitled to solicit, invest, borrow and encumber its leasehold interest in the Property as necessary to finance the construction, installation, maintenance and operation of all improvements to the Property.

       5.3   <u>No Continuous Operation</u>. Nothing herein shall require Tenant to continuously operate or occupy the Leased Premises; provided, however, that any vacation or under-utilization of the Leased Premises shall not excuse Tenant's obligations to maintain and repair the Leased Premises, as provided in this Lease Agreement.

       6.   <u>Utilities</u>. As part of the Additional Rent, during the Term, Tenant shall pay all costs, expenses, charges and amounts, of whatever kind or character, including all connection fees and cost of all laterals, for all utilities and services supplied to the Leased Premises, including, without limitation, all water, gas, electricity, telephone and other telecommunications and data delivery services (such as cable and Internet services), sewer service, protective service and trash disposal. Landlord shall not be liable in damages or otherwise, nor shall there be an abatement of Rent, if any utility or service is interrupted or impaired for any reason other than due solely to Landlord's willful misconduct or gross negligence.

       7.   <u>Payment of Taxes</u>. As part of the Additional Rent, during the Term, Tenant shall pay prior to delinquency all real and personal property taxes, impact fees, local improvement rates, and other ad valorem assessments (whether general or special, known or unknown, foreseen or unforeseen) and any tax or assessment levied or charged in lieu thereof, whether assessed against Landlord and whether collected from Landlord, including, without limitation, any privilege or excise tax, assessments (whether general or special), charges and fees imposed, assessed or levied by any governmental or public authority against or upon the Leased Premises, whether known or unknown, anticipated or unanticipated (all of which are herein collectively referred to as "**Taxes**"); provided, however, that any Taxes which are levied in a lump sum amount, but which may be paid in installments over a period of time, shall be required to be paid by Tenant only as said installments fall due. Taxes shall include any fine, penalty, interest or cost attributable to the delinquent payment thereof. All reasonable expenses, including attorneys, expert and other witness fees, incurred in contesting the validity or amount of any Taxes or in obtaining a refund of Taxes will be considered as part of the Taxes for the tax year in which such expenses are incurred. Tenant's obligation to pay all Taxes shall not extend to or include federal or state income taxes, franchise taxes, or estate, inheritance or gift taxes, or any other income taxes assessed against Tenant or Landlord.

       (a)   <u>Maintenance and Repairs of Leased Premises</u>. During the Term, but subject to the provisions of Sections 9 and 14 hereof, normal wear and tear, Tenant, at Tenant's sole cost and expense, shall maintain the Leased Premises in good order, condition and repair and in a clean and sanitary condition, including, without limitation, all plumbing, heating, air conditioning, ventilating, electrical and lighting facilities and equipment, fixtures, interior walls, ceilings, columns, beams, floors, windows, window sashes and frames, doors and door frames,

glass, landscaping, driveways, walkways, parking lots, signs, furnishings, trade fixtures, leasehold improvements, equipment and other personal property located on the Leased Premises, regardless of fault and regardless of whether such repairs are ordinary or extraordinary, foreseeable or unforeseeable, or capital or non-capital improvements. Landlord and Tenant agree that the payment of Rent hereunder shall be absolutely net to the Landlord and that the Tenant shall: i) be have a duty to maintain and operate all aspects of the Leased Premises, including walls, roof and foundation in a condition similar to first class medical or other similar facilities located in the region; and, ii) pay all expenses necessary to construct, improve and maintain the Leased Premises in accordance with that standard as determined in the reasonable discretion of the Landlord. After repair, restoration, or replacement, the Prior Improvements and Subsequent Improvements shall be at least equal in fair market value, quality and use as the condition before damage or destruction. Landlord is not required to perform any service for the improvement or repair of the Leased Premises. Any election by Landlord to perform any of Tenant's obligations is not a waiver of any right or remedy of Tenant's default and Tenant shall promptly reimburse, defend and indemnify Landlord for any liability, loss or expense.

    8.    <u>Insurance</u>.

        8.1    <u>Insurance on Tenant's Personal Property and Fixtures</u>. At all times during the Term, Tenant shall cause to keep in force at no cost or expense to Landlord with insurance companies acceptable to Landlord, hazard insurance on an "all-risk type" or equivalent policy form, and shall include fire, theft, extended coverages, vandalism and malicious mischief, in companies acceptable to Landlord on all of Tenant's contents, fixtures, furnishings, equipment and all improvements or additions made by Tenant to the Leased Premises. Coverage shall be equal to 100% of the replacement cost value of Tenant's contents, fixtures, furnishings, equipment and all improvements or additions made by Tenant to the Leased Premises. All proceeds from such policies shall be the property of the Tenant and subject to its discretion whether, and in what manner, to restore or abandon such loss. The policy shall not be cancelled or materially changed without first giving Landlord thirty (30) days written notice. If so elected by Landlord and Tenant, Tenant may include insuring the Leased Premises under its insurance policy, or Landlord may include Tenant's Subsequent Improvements under Landlord's policy. In either event, either party shall proportionately contribute towards the payment of insurance premiums towards the other's policy. Nevertheless, policy proceeds attributable to Tenant's Subsequent Improvements or Tenant's in this lease shall be the sole and absolute property of the Tenant.

        8.2    <u>Liability Insurance.</u> Tenant shall during the entire term hereof, keep in full force and effect, or cause to be maintained at no cost or expense to Landlord with insurance companies acceptable to Landlord, a policy of Commercial General Liability Insurance with limits of not less than $1,000,000 each Occurrence and $2,000,000 General Aggregate. The policy shall apply to the Leased Premises and all operations of the business operated by Tenant. Such policy shall name Landlord as additional insured and shall provide that coverage for the additional insured is primary and not contributory with other insurance. The policy shall not be cancelled or materially changed without first giving Landlord thirty (30) days written notice.

        8.3    <u>Property Insurance</u>. Tenant shall cause to be maintained at no cost or expense to Landlord an "all-risk type" or equivalent policy form, and shall include fire, theft, extended coverages, vandalism and malicious mischief on the Leased Premises during the Term.

        8.4      Waiver of Subrogation.  Landlord and Tenant hereby waive all rights to recover against each other, against any other Tenant or occupant of the Leased Premises and against the officers, directors shareholders, partners, joint venturers, employees, agents, customers, invitees or business visitors of each other or of any other tenant or occupant of the Leased Premises, for any loss or damage arising from any cause covered by any insurance carried by the waiving party, to the extent that such loss or damage is actually covered

        8.5      Destruction or Casualty.  If the Leased Premises are damaged or destroyed by any casualty insured against under any insurance policy maintained by Tenant or Landlord, Tenant shall, on receipt of the insurance proceeds, elect in its sole and absolute discretion whether to restore or abandon the Subsequent Improvements to their prior condition.  If the Leased Premises (other than the Subsequent Improvements) shall be partially damaged by any casualty insured against under any insurance policy maintained by Tenant or Landlord, Tenant shall repair the portion of the Leased Premises damaged by such casualty.  Until such repair is complete, Fixed Rent shall be abated proportionately as to that portion of the Leased Premises rendered untenantable.

        9.      Indemnification.

        9.1      General Indemnification.  Tenant shall indemnify, defend (with counsel reasonably acceptable to Landlord) and hold harmless Landlord from and against all demands, claims, causes of action, judgments, losses, damages, liabilities, fines, penalties, costs and expenses, including reasonable attorneys' fees, arising from the occupancy or use of the Leased Premises by Tenant or its employees, officers, agents and contractors (hereinafter collectively referred to as the "**Tenant Related Parties**"), the conduct of Tenant's business on the Leased Premises, the cost and expense of any construction, alteration, maintenance or repair performed by, through or under Tenant and any mechanic's liens arising in connection therewith, any act or omission by Tenant or Tenant Related Parties, any default or nonperformance by Tenant under this Lease, any injury or damage to the person, Leased Premises or business of Tenant or any litigation commenced by or against Tenant to which Landlord is made a party without willful or intentional misconduct, recklessness, or gross negligence on the part of Landlord.  Landlord shall indemnify, defend (with counsel reasonably acceptable to Tenant) and hold harmless Tenant from and against all demands, claims, causes of action, judgments, losses, damages, liabilities, fines, penalties, costs and expenses, including reasonable attorneys' fees, arising from the occupancy or use of the Leased Premises by Landlord or its employees, agents, officers and contractors (hereinafter collectively referred to as the "**Landlord Related Parties**"), conduct of Landlord's business on the Leased Premises, any act or omission of Landlord or Landlord Related Parties, any default or nonperformance by Landlord under this Lease, any injury or damage to the person, Leased Premises or business of Landlord or any litigation commenced by or against Landlord to which Tenant is made a party without primary negligence, willful or intentional misconduct, recklessness, or gross negligence on the part of Tenant. For purposes of this Section 10.1 the term "primary negligence" shall mean the level of fault of Tenant in an action with respect to which Tenant's negligence results in the majority of the damages claimed or harm alleged in such action.

        9.2      Environmental Indemnification.

        (a)      In addition to, and without limiting the scope of, any other indemnities provided under this Lease, Tenant shall indemnify, defend (with counsel

reasonably acceptable to Landlord) and hold harmless Landlord from and against any and all demands, losses, costs, expenses, damages, bodily injury, wrongful death, property damage, claims, cross-claims, charges, actions, lawsuits, liabilities, obligations, penalties, investigation costs, removal costs, response costs, remediation costs, natural resources damages, governmental administrative actions and reasonable attorneys' and consultants' fees and expenses, directly or indirectly, in whole or in part, arising out of or relating to (i) the release of Hazardous Materials (as defined in Section 10.3) by Tenant or the Tenant Related Parties, (ii) the violation of any Hazardous Materials laws by Tenant or the Tenant Related Parties, or (iii) the use, storage, generation or disposal of Hazardous Materials in, on, about or from the Leased Premises by Tenant, the Tenant Related Parties, or any tenant of the improvements (the items listed in clauses (i) through and including (iii) being referred to herein individually as a "**Tenant Release**" and collectively as the "**Tenant Releases**").

(b)     In addition to, and without limiting the scope of, any other indemnities provided under this Lease, Landlord shall indemnify, defend (with counsel reasonably acceptable to Tenant) and hold harmless Tenant from and against any and all demands, losses, costs, expenses, damages, bodily injury, wrongful death, Leased Premises damage, claims, cross-claims, charges, action, lawsuits, liabilities, obligations, penalties, investigation costs, removal costs, response costs, remediation costs, natural resources damages, governmental administrative actions and reasonable attorneys' and consultants' fees and expenses, directly or indirectly, in whole or in part, arising out of or relating to (i) the release of Hazardous Materials by Landlord or the Landlord Related Parties, (ii) the violation of any Hazardous Materials laws by Landlord or the Landlord Related Parties, (iii) the presence of any Hazardous Material on, in or under the Leased Premises prior to the date hereof which presence is a result of the activities of Landlord or the Landlord Related Parties, or (iv) the use, storage, generation or disposal of Hazardous Materials in, on, about or from the Leased Premises by Landlord or the Landlord Related Parties (the items listed in clauses (i) through and including (iv) being referred to herein individually as a "**Landlord Release**" and collectively as the "**Landlord Releases**").

9.3     <u>Definition of Hazardous Materials</u>.  The term "Hazardous Materials" shall mean any substance:

(a)     which is flammable, explosive, radioactive, toxic, corrosive, infectious, carcinogenic, mutagenic or otherwise hazardous and is or becomes regulated by any governmental authority, agency, department, commission, board or instrumentality of the United States, the State of Arkansas or any political subdivision thereof; or

(b)     which contains asbestos, organic compounds known as polychlorinated biphenyls, chemicals known to cause cancer or reproductive toxicity or petroleum, including crude oil or any fraction thereof; or which is or becomes defined as a pollutant, contaminant, hazardous waste, hazardous substance, hazardous material or toxic substance under the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901-6987; the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601-9657; the Hazardous Materials Transportation Act, 49 U.S.C. §§ 1801-1812; the Clean Water Act, 33 U.S.C. §§ 1251-1387; the Clear Air Act, 42 U.S.C. §§ 7401-7642; the

Toxic Substances Control Act, 15 U.S.C. §§ 2601-2655; the Safe Drinking Water Act, 42 U.S.C. §§ 300f-300j; the Emergency Planning and Community Right to Know Act of 1986, 42 U.S.C. §§ 11001-11050; under applicable provisions of the Arkansas Code, as any of the same have been or from time to time may be amended; and any similar federal, state and local laws, statutes, ordinances, codes, rules, regulations, orders or decrees relating to environmental conditions, industrial hygiene or Hazardous Materials on the Leased Premises, including all interpretations, policies, guidelines and/or directives of the various governmental authorities responsible for administering any of the foregoing, now in effect or hereafter adopted, published and/or promulgated; or

(c)  the presence of which on the Leased Premises requires investigation or remediation under any federal, state or local statute, regulation, ordinance, order, action, policy, or common law; or

(d)  the presence of which on the Leased Premises causes or threatens to cause a nuisance on the Leased Premises or to adjacent properties or poses or threatens to pose a hazard to the health and safety of persons on or about the Leased Premises.

9.4  **Use of Hazardous Materials**.  Tenant shall not, and shall not permit any Tenant Related Parties to, use, store, generate, release or dispose of Hazardous Materials in, on, about or from the Leased Premises in violation of applicable laws.  Landlord shall not, and shall not permit any Landlord Related Parties to, use, store, generate, release or dispose of Hazardous Materials in, on, about or from the Leased Premises in violation of applicable laws.

10.  **Compliance with Applicable Laws, Rules and Regulations**.

10.1  **In General**.  Tenant shall, at Tenant's sole expense, promptly observe and perform (or cause the same to be done) the requirements of (a) all applicable federal, state, county, municipal or other applicable governmental authority laws now or hereafter in effect and applicable to the Leased Premises, any improvement thereon, use thereof or Tenant's leasehold interest therein and (b) the covenants and conditions of all insurance policies at any time duly issued or enforce which are applicable to the conduct of Tenant's business at the Leased Premises.

10.2  **Release of Hazardous Materials**.  If Tenant discovers that any spill, leak or release of any quantity of any Hazardous Materials has occurred on, in or under the Leased Premises, in violation of applicable law or that may give rise to liability under applicable law, Tenant shall promptly notify Landlord.  In the event such release is a Tenant Release, Tenant shall (or shall cause others to) promptly and fully investigate, cleanup, remediate and remove all such Hazardous Materials as may remain and so much of any portion of the environment as shall have become contaminated, all in accordance with applicable government requirements, and shall replace any removed portion of the environment (such as soil) with uncontaminated material of the same character as existed prior to contamination.  In the event such release is a Landlord Release, Landlord shall (or shall cause others to) promptly and fully investigate, cleanup, remediate and remove all such Hazardous Materials as may remain and so much of any portion of the environment as shall have become contaminated, all in accordance with applicable government requirements, and shall replace any removed portion of the environment (such as soil) with uncontaminated material of the same character as existed prior to contamination.  With twenty

{00568544.DOCX /}  9

(20) days after any such spill, leak or release, the party responsible for the remediation of such release shall give the other party a detailed written description of the event and of such responsible party's investigation and remediation efforts to date. Within twenty (20) days after receipt, such responsible party shall provide the other party with a copy of any report or analytical results relating to any such spill, leak or release. In the event of a release of Hazardous Material in, on or under the Leased Premises by the Tenant Related Parties, Tenant shall not be entitled to an abatement of Rent during any period of abatement. In the event of a release of Hazardous Materials in, on or under the Leased Premises by the Landlord Related Parties, if the presence of or remediation of such Hazardous Materials causes Tenant in Tenant's reasonable business judgment to cease to operate all or any part of the Leased Premises, Tenant shall be entitled to an equitable abatement of Rent.

11.  Liens.

11.1  Creation of Liens. Tenant shall not suffer or permit any mechanics' lien or other lien to be filed against all or any portion of the Leased Premises because of work, labor, services, equipment or materials supplied or claimed to have been supplied to the Leased Premises at the request of Tenant. If any such lien is filed against all or any portion of the Leased Premises, Tenant shall give Landlord immediate notice of the filing and shall cause the lien to be discharged within thirty (30) days after receiving notice of such lien. If Tenant fails to discharge such lien within such period, or fails to contest such lien as provided in Section 12.2 below, in addition to any other right or remedy Landlord may have, after twenty (20) days prior written notice to Tenant, Landlord may, but shall not be obligated to, discharge the lien by paying to the claimant the amount claimed to be due or by procuring the discharge in any other manner permitted by law. Any amount paid by Landlord, together with all costs, fees and expenses in connection therewith, including without limitation Landlord's reasonable attorneys' fees, together with interest thereon, shall be repaid by Tenant to Landlord upon Tenant's receipt of written demand from Landlord. Tenant shall indemnify and defend Landlord against all losses, costs, damages, expenses (including reasonable attorney's fees), liabilities, penalties, claims, demands and obligations, resulting from any such lien. The foregoing shall not prohibit Tenant or any subtenants from placing a lien against their applicable leasehold interest in the Leased Premises or the improvements in favor of a mortgagee or other lender taking any interest in Tenant's or any subtenant's applicable interest in fixtures attached to the Leased Premises.

11.2  Contest of Liens. At any time, from time to time, during the Term, Tenant may, at Tenant's sole costs and expense, contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application of any liens, provided that (a) no Event of Default has occurred and is continuing, (b) such proceeding shall suspend the collection of or enforcement of such liens, (c) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Tenant is subject and shall not constitute a default thereunder beyond all applicable notice and cure periods, (d) no part of or interest in any Leased Premises will be in imminent danger of being sold, forfeited, terminated, canceled or lost, and (e) Tenant shall promptly upon final determination thereof pay the amount of such liens, together with all costs, interest and penalties. Landlord shall, if required by Tenant, at no cost and expense to Landlord, join in any proceeding necessary to contest a lien in accordance with the provisions of this Section 12.2.

11.3     Encumbrance of the Leased Premises.  Tenant shall not be entitled to encumber, pledge, hypothecate or otherwise secure its (or any of its assignee's or subtenant's) leasehold estate in the Property or the Leased Premises through loans or other credit facility without the prior written consent of the Landlord which may be granted or denied in its sole and absolute discretion.

12.     Possession; Surrender.

12.1     Delivery of Leased Premises to Tenant.  Concurrently with the Effective Date, Landlord shall deliver physical possession of the Leased Premises to Tenant.

12.2     Surrender of Leased Premises by Tenant.  At the expiration of the Term or upon earlier termination of this Lease, Tenant shall surrender and deliver up the Leased Premises, and ownership to all improvements, including both Prior Improvements and Subsequent Improvements, shall vest in Landlord.

13.     Condemnation.  If the whole or any part of the Leased Premises shall be taken or condemned for a public or quasi-public use or purpose under any statute or by right of eminent domain, this Lease shall terminate with respect to the portion of the Leased Premises so taken and Tenant shall immediately vacate that portion of the Leased Premises so effected by the taking or condemnation.  Tenant shall be entitled to that portion of the condemnation award attributable to the value of the Subsequent Improvements and Tenants leasehold interest in the property.  Rent shall be adjusted as of the time of such termination. With respect to any portion of the Leased Premises not so taken, this Lease shall continue in full force and effect and all obligations of the Tenant under this Lease shall remain in full force and effect, except that Fixed Rent shall be proportionately abated based on the portion of the land and building subject to such taking. In the event of any such taking, condemnation or conveyance, Landlord shall be entitled to any portion of the reward not attributable to the Subsequent Improvements and Tenant's interest in the Lease. In the event a portion of the Building is taken such that Tenant cannot operate its business from the Building, Tenant may terminate this Lease upon thirty (30) days written notice to Landlord.

14.     Assignability, Subleasing and Encumbering the Leased Premises.  Provided Tenant is not in default of any of the provisions of this Agreement, Tenant shall be entitled to do each or all the following without the prior consent of the Landlord.  Tenant shall notify Landlord in the event of the assignment of this Agreement or the sublease of the Leased Premises as permitted below.  Tenant may:

14.1     Sale/Assignment of Lease.  Tenant shall be entitled to sell or assign all or any portion of this Lease to such assignee and upon such terms and conditions as the Tenant shall determine provided Tenant shall remain fully liable for all of Tenant's obligations and responsibilities under this Lease Agreement notwithstanding such assignment.  In additional to Tenant's continued responsibility as provided herein, upon Landlord's notification of such sale or assignment, Landlord shall recognize Tenant's assignee as its Tenant under this Lease Agreement and shall also look to Tenant's assignee for the performance of all Tenant's obligations under this Lease Agreement.  In the event of a partial or fractional assignment, Landlord will recognize and cooperate with both the Tenant and the Tenant's assignees under the Lease.

14.2 <u>Sublease</u>. Tenant shall be entitled to sublet all or a portion of the Leased Premises to such sub-tenant as the Tenant may determine in its sole and absolute discretion provided Tenant shall remain liable for all of Tenant's responsibilities under this Lease Agreement. In the event of such a sublease, Landlord shall:  i) recognize Tenant's sub-tenant and its right to exercise all its right under the sublease agreement.  Landlord shall take no actions to interfere with the subtenant's authorized use of the Leased Premises;  ii)  honor the terms and conditions of the sublease agreement to the extent they are not in violation of the terms and conditions of this Agreement; iii) recognized subtenant's right to construct, install and maintain alterations and improvements upon the Leased Premises and that such installations, alteration and improvements shall constitute permissible Subsequent Improvements as provided in this Agreement;  iii) acknowledge that the terms and conditions of the Lease Agreement, including but not limited to the ownership, use and enjoyment of such Subsequent Improvements and the application of insurance and condemnation fees shall apply to the subtenant as provided in this Lease Agreement and the Subtenant Lease Agreement to the extent they are not inconsistent with the terms and conditions of this Lease Agreement.

14.3 <u>Encumbrances upon the Leased Premises.</u>  Throughout the Term of this Lease, Tenant shall have the right to fully encumber its interest in the Leased Premises and leasehold estate without the prior consent or knowledge of the Landlord and upon such terms and conditions as determined by Tenant.  Tenant shall not encumber Landlord's interest in the Leased Premises

15. <u>Default and Remedies</u>.

15.1 <u>Default by Tenant</u>. In the event Tenant defaults in its performance of its obligations hereunder, Landlord shall give written notice to Tenant designating such default. Tenant shall have a period of fifteen (15) days following the giving of such notice within which to correct (or in the case of default (other than a monetary default) which reasonably cannot be corrected within such fifteen (15) day period, then a period of fifteen (15) days within which to commence action to correct), the default of which Tenant has received notice.  If Tenant shall fail to correct such default within said fifteen (15) day period or, if applicable, to commence action to correct such default within such fifteen (15) day period and thereafter to diligently pursue the same to completion, Landlord may terminate this Lease without further obligation to Tenant or take any other action or remedy permitted by applicable law.  Landlord's delay or failure in exercising any right hereunder, or partial exercise of any right hereunder, shall not constitute a waiver of that or any other right.

15.2 <u>Default by Landlord</u>.  Landlord shall not be in default under this Lease unless Landlord fails to perform an obligation required of Landlord under this Lease within thirty (30) days after written notice by Tenant to Landlord and the holder of any mortgage or deed of trust covering the Leased Premises whose name and address have been furnished to Tenant in writing, specifying the respects in which Landlord has failed to perform such obligation, and such holder fails to perform such obligation within a second fifteen (15) day period commencing on the expiration of such first thirty (30) day period.  If the nature of such obligation is such that more than fifteen (15) days are reasonably required for performance or cure, Landlord shall not be in default if Landlord or such holder commences performance within their respective fifteen (15) day periods and after such commencement diligently prosecutes the same to completion.  In no event

may Tenant terminate this Lease or withhold the payment of rent or other charges provided for in this Lease as a result of Landlord's default.

16. <u>Quiet Enjoyment</u>.  So long as Tenant performs all of Tenant's obligations hereunder, Tenant shall peacefully and quietly have, hold and enjoy the Leased Premises for the Term without interference from Landlord, or anyone claiming by, through or under Landlord, subject to all of the provisions of this Lease, and Landlord shall defend Tenant's possession of the Leased Premises against such persons.

17. <u>Landlord's Right of Entry</u>.

   17.1 <u>Access to Inspect Leased Premises</u>.  Tenant shall permit Landlord to enter the Leased Premises at any time for the purpose of inspecting the Leased Premises or conducting any reasonable test or environmental audit of the Leased Premises or Tenant's operation or use of the Leased Premises to determine Tenant's compliance with this Lease; provided, however, any such entrance shall not interfere with the rights of Tenant.  In the event Landlord's entry unreasonably interferes with the use or operation of the Leased Premises by Tenant or any tenant of the improvements, Tenant shall be entitled to an equitable abatement of Rent.

18. <u>Estoppel Certificate</u>.  At any time within fifteen (15) business days after notice of request by either Landlord or Tenant, the other party shall execute, acknowledge and deliver to the requesting party, or any lender to or purchaser from such party, a statement certifying to such facts regarding the Lease as the proposed recipient reasonably requests including, without limitation, that this Lease is unmodified (or stating any modifications that are in existence) and in full force and effect, the amount of Rent and other charges and the dates through which the same have been paid, and that no default exists on the part of either Landlord or Tenant (or specifying the nature of any default which does exist) or any other statements as may be reasonably requested by a lender so long as such additional statements do not increase Landlord's or Tenant's obligations or liabilities under this Lease.  The statement may be relied upon by any auditor for, creditor of, or purchaser from the requesting party.

19. <u>No Waiver</u>.  No failure by any party to insist on the strict performance of any covenant, duty or condition of this Lease or to exercise any right or remedy consequent on a breach of this Lease shall constitute a waiver of any such breach or of such or any other covenant, duty or condition.

20. <u>Notices</u>.  Any notice required or permitted hereunder to be given or transmitted between Landlord and Tenant shall be in writing and either personally delivered or mailed postage prepaid by certified mail or registered mail, or sent by a nationally recognized commercial overnight courier, addressed as follows:

   <u>To Landlord</u>:   GOLDSMITH PROPERTIES, LLC
   9070 Blackjack Road
   Alta, UT 84092

   <u>To Tenant</u>:   MILLROCK BLYTHEVILLE, LLC
   2100 Pleasant Grove Blvd, Suite 200

Pleasant Grove, UT 84062

Either party may, by notice to the other given as prescribed in this Section, change said address for any future notices which are mailed under this Lease. In the event there is or comes to be more than one party which constitutes Landlord hereunder, any notice or payment required or permitted hereunder to be given or made by Tenant shall be effective as to each such party constituting Landlord if given or made to any one of them. Any notice which is mailed under this Lease shall be effective upon its delivery.

21. <u>Force Majeure</u>. Whenever a period of time is herein prescribed for action to be taken by either party, said party shall not be liable or responsible for, and there shall be excluded from the computation of any such period of time, any delays due to strikes, riots, acts of God, unusual and unjustified delay caused by failure of a governmental agency to issue a building or occupancy permit despite diligent pursuit thereof, shortages of labor or materials because of priority or similar regulations or order of any governmental or regulatory body, war or any other causes of any kind which are beyond the reasonable control of said party ("<u>Force Majeure</u>"). Lack of funds or inability to obtain financing shall not be an event of Force Majeure.

22. <u>Interpretation</u>. The captions to the Sections of this Lease are for convenience only and shall in no way affect the manner in which any provision hereof is construed. Whenever the context or circumstance so requires, the singular shall include the plural, the plural shall include the singular, the whole shall include any part thereof, and any gender shall include both other genders. Landlord and Tenant have negotiated this Lease, have had an opportunity to be advised by legal counsel respecting the provisions contained herein and have had the right to approve each and every provision hereof. Therefore, this Lease shall not be construed against either Landlord or Tenant as a result of the preparation of this Lease by or on behalf of either party.

23. <u>Severability</u>. If any covenant, condition, provision, term or agreement of this Lease shall, to any extent, be held invalid or unenforceable, the remaining covenants, conditions, provisions, terms and agreements of this Lease shall not be affected thereby, but each covenant, condition, provision, term or agreement of this Lease shall be valid and in force to the fullest extent permitted by law.

24. <u>Survival</u>. All obligations (together with interest on monetary obligations) accruing before expiration of the Term shall survive the expiration or other termination of this Lease.

25. <u>No Merger</u>. There shall be no merger of this Lease, or the leasehold estate created by this Lease with any other estate or interest in the Leased Premises by reason of the fact that the same person or entity may acquire, hold or own directly or indirectly, (i) this Lease, the leasehold interest created by this Lease or any interest therein and (ii) any such other estate or interest in the Leased Premises, or any portion thereof. No merger shall occur unless and until all persons and entities having an interest (including a security interest) in (a) this Lease or the leasehold estate created thereby and (b) any such other estate or interest in the Leased Premises, or any portion thereof, shall join in a written instrument expressly effecting such merger and duly record the same.

26.     Relationship of the Parties.  This Lease does not create the relationship of principal and agent, partnership, joint venture, association or any other relationship between Landlord and Tenant, other than that of landlord and tenant.

27.     Recourse by Tenant.  Anything in this Lease to the contrary notwithstanding, Tenant agrees that it shall look solely to the estate and property of Landlord in the land and the buildings comprising the Leased Premises, subject to the prior rights of any mortgagee of all or any portion of the Leased Premises, for the collection of any judgment or other judicial process requiring the payment of money by Landlord on any default or breach by Landlord with respect to any of the terms, covenants, and conditions of this Lease to be observed and/or performed by Landlord, and no other asset of Landlord shall be subject to levy, execution or other procedures for the satisfaction of Tenant's remedies.

28.     Miscellaneous.  This Lease supersedes any and all prior negotiations, agreements or understandings between Landlord and Tenant related to the subject matter hereof.  None of the provisions of this Lease may be altered or modified except through an instrument in writing signed by both parties.  This Lease shall be governed by and construed in accordance with the laws of the State of Utah, except its choice of law rules which would apply the law of another state.  Landlord and Tenant shall execute and deliver all documents, provide all information and take or forebear from all such action as may be reasonably necessary or appropriate to achieve the purposes of this Lease.  This Lease shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.  This Lease and the other agreements, instruments, or documents attached hereto, constitute the entire agreement between the parties pertaining to the subject matter hereof, and supersedes all prior agreements and understandings pertaining thereto.  This Lease may be executed in counterparts, all of which taken together shall constitute one Lease binding on the parties.  Any claim or lawsuit arising out of this Lease shall be brought in the State or Federal Court, as applicable, having jurisdiction where the Leased Premises is located, unless agreed otherwise by the parties.  Tenant and Landlord waive any right to trial by jury or to have a jury participate in resolving any dispute, whether sounding in contract, tort, or otherwise, between Landlord and Tenant arising out of this Lease or any other instrument, document, or agreement executed or delivered in connection herewith or the transactions related hereto.

*[SIGNATURE PAGE IMMEDIATELY FOLLOWS]*

IN WITNESS WHEREOF, Landlord and Tenant have executed this Lease as of the date first written above.

LANDLORD:

**GOLDSMITH PROPERTIES, LLC**,
a Utah limited liability company

*Doug Goldsmith*

Douglas Goldsmith
Manager


TENANT:

**MILLROCK BLYTHEVILLE, LLC**,
a Utah limited liability company

*kevin G. long*

Kevin Long
Manager

712072.01

**EXHIBIT "A"**

**Description of Leased Property**

{00568544.DOCX /}  Exhibit A