Wes Felix (#6539)
**NELSON CHRISTENSEN**
**HOLLINGWORTH & WILLIAMS**
68 S. Main Street, 6th Floor
Salt Lake City, UT 84101
Telephone: (801) 531-8400
Facsimile: (801) 363-3614
wes@nchwlaw.com

*Attorney for the Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DOUGLAS GOLDSMITH, an individual, GOLDSMITH PROPERTIES, LLC a Utah limited liability company<br><br>Plaintiffs,<br><br>vs.<br><br>KEVIN G. LONG, an individual; MILLCREEK COMMERCIAL PROPERTIES, LLC, a Utah limited liability company; MILLROCK BLYTHEVILLE, LLC, a Utah limited liability company; MILLROCK INVESTMENT FUND 1, LLC, a Utah limited liability company; COLLIERS INTERNATIONAL, a Utah company; MARK MACHLIS, an individual; BRENT SMITH, and individual, and GREEN IVY REALTY, INC., a Utah corporation,<br><br>Defendants. | **PLAINTIFF'S OPPOSITION TO DEFENDANTS MILLROCK INVESTMENT FUND 1, LLC, MILLROCK BLYTHEVILLE, LLC, AND BRENT SMITH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM**<br><br>Case No. 2:24-cv-00499-AMA-CMR<br><br>Judge Ann Marie McIff Allen<br>Magistrate Judge Cecilia M. Romero |

Plaintiffs Douglas Goldsmith and Goldsmith Properties, LLC, (collectively "Plaintiffs"), through counsel and pursuant to Local Rule 7-1 DUCivR and Fed. R. Civ. P. 12(b), submit this memorandum in opposition to Defendants Millrock Investment Fund 1, LLC, Millrock

Blytheville, LLC, and Brent Smith's Motion to Dismiss Second Amended Complaint and Supporting Memorandum ("MTD"). The Second Amended Complaint [Dkt. 99] shall be referred to as "SAC".

## I. INTRODUCTION

Millcreek Commercial Properties, LLC ("Millcreek") operated a fraudulent scheme buying commercial property cheaply, then reselling the same property at four or five times the purchase price to tenant-in-common investors, typically older retired individuals, as a passive and safe investment providing a steady reliable stream of income in retirement. Millcreek would market the property based upon the income to be received from long-term "dream tenants" who would pay from 6% to 9% on invested money for periods of at least 20 years. Defendants knew that the tenants were incapable of performing on the long-term leases. Brent Smith knew that most of the invested money was diverted to Millrock, to undisclosed pay-offs, kick-backs and finder fees or simply kept and spent by the principals of Millrock like Smith. Smith and Millrock supported the fraudulent scheme by using investor money to pay sham rents giving the appearance that the tenant was paying per the parties' agreements. Instead, the money would come directly from investor funds or from funds laundered through Millrock and then paid back to investors.

When Smith and Millrock ceased payment of the sham rents, the investment collapsed, and investors were left holding near worthless property without any prospect of finding a tenant who could pay the outrageously inflated rents they had been promised. Smith and Millrock then kept the money they stole from plaintiffs and denied any further responsibility.

Smith and Millrock directly profited from the fraud as the bulk of investor funds went to Millrock. Millcreek, which has now defaulted, was essentially a pass-through entity. It now

appears that Smith and Millrock plan to shift blame to Millcreek, the marketing entity currently without any assets or operations, and pretend that Smith and Millrock were merely another set of "investors" in the fraud. But this is a lie. Smith and Millrock were central to the fraudulent plan. Smith participated in the creation of marketing materials, disseminated or participated in disseminating marketing materials, and participated in marketing events pitching the fraud to potential investors. Smith and Millrock skimmed money from the purchases and helped divert funds to deceive investors into thinking that the tenant leases and rent payments were legitimate. Smith and Millrock knew that the tenants were tacitly or overtly participants in the fraud and that they lacked the economic and operational wherewithal to pay rents to investors. Indeed, Smith as a substantial owner in Millrock was second only to Kevin Long in devising and executing the fraudulent scheme.

## II. <u>LEGAL STANDARD</u>

When deciding a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, a court "accept[s] as true all well-pleaded factual allegations … and view[s] these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562. "Rather, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Greer v. Moon*, 83 F.4th 1283, 1292 (10th Cir. 2023) (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "Motions to dismiss are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559.

### III.  ARGUMENT

**A.  Rule 10b-5(a) and (c) of the Securities Exchange Act of 1933 Encompass Disseminating and Failing to Correct False or Misleading Statements**.

In their Motion to Dismiss, Defendants do not address the Rule 10b-5(a) "scheme to defraud" aspect of Plaintiff's claim in its First Cause of Action. The United States Supreme Court has held, in a decision handed down after *CDC,* that the "dissemination of false or misleading statements with intent to defraud falls within the scope of subsections (a) and (c) of Rule 10b-5." Lorenzo v. SEC, 587 U.S. 71 (2019). Pursuant to Lorenzo, scheme allegations need only plead with particularity defendants' participation and control over disseminated fraudulent materials. *See e.g., Malouf v. SEC*, 933 F.3d 1248 (2019); Sec. Am. Complaint, ¶¶ 76-79. "The Court expressly held that a person could incur liability under these provisions when the conduct involves another person's false or misleading statement." *Id.*

Plaintiff clearly alleges a fraudulent scheme. Complaint, ¶¶ 1-10. In the Complaint, Plaintiff alleges a scheme to defraud that involved more than making misleading statements to the public. Brent Smith and Millrock engaged in a fraudulent scheme through various means that operated as a deception on the investing public concerning the value of property sold, the existence of quality long term tenants, the quantity and quality of due diligence establishing the quality of the leases and tenants and the secretive disposition of numerous kickbacks, commissions and fees.  In this scheme Brent Smith and Millrock provided funding and purchased the low value properties later sold at vastly inflated prices.  Millcreek and Kevin Long ran the marketing arm of the Ponzi scheme. Plaintiffs allege that Smith participated in creating, supervised and controlled the content of fraudulent materials disseminated by Millrock and Millcreek.  As Smith has testified, he was vice president in charge of marketing and he

3

"supervised and conducted oversight of the marketing materials to ensure their accuracy." Sec. Am. Compl., ¶¶ 29, 30. In any case, Defendants did not move to dismiss, and Plaintiff adequately alleges a Rule 10b-5(a) "scheme to defraud" claim in its First Cause of Action.

### B. Plaintiffs Have Plead Fraud with the Requisite Particularity.

#### i. Group Pleading Is Sufficient Where Defendants Conspired to Defraud Plaintiffs

In a similar case, Judge Campbell noted that:

> Group pleadings cannot logically be avoided if, in fact, a group worked together to defraud others: It is obvious that a plaintiff may not be privy to the workings of a group of defendants who have acted in concert to defraud him… Under Rule 9(b) the plaintiff cannot be required to allege with particularity the manner in which individual defendants acted in concert… Plaintiffs have alleged the individual defendants responsible for making certain oral public or written representations attributable to them. The remaining individuals are alleged to have acted in concert to defraud the plaintiffs though various statements and reports. Plaintiffs' allegations are sufficient to provide fair notice of the claims asserted and allow defendants to answer the complaint.[1]

This doctrine applies because first, Plaintiffs have in fact alleged that Defendants conspired to defraud Plaintiffs. Plaintiffs have alleged numerous specific misrepresentations and omissions in Defendants' marketing materials that where controlled and disseminated by Smith. Because the threshold requirements are met Plaintiffs' allegations are sufficient to provide fair notice of the claims asserted and allow defendants the requisite knowledge to fairly answer the complaint.

#### ii. The Heightened Pleading Requirements Cannot Be Applied in the Same Manner to Alleged Omissions

As Judge Campbell observed in the related Rockwell fraud case, omissions which can serve as the sole basis for both securities fraud and common law fraud claims cannot be provided with a

---

[1] DiTucci v. Ashby, 2020 U.S. Dist. LEXIS 34505 (internal quotations omitted).

4

specific place and time. "[I]t is unclear how Plaintiffs could have been more specific; because they are alleging that each Defendant failed to make certain disclosures [and] there is no practical way for Plaintiffs to detail the date or place of conversations that never occurred." *DiTucci v. Ashby*, 2019 U.S. Dist. LEXIS 106144 *13, (D. Utah June 24, 2019). And as previously stated, "a claim sounding in fraud contains a hybrid of allegations, some of which satisfy the strictures of Rule 9(b) and some of which do not, an inquiring court may sustain the claim on the basis of those specific allegations that are properly pleaded." *Homes Dev. Corp. v. Edmund & Wheller, Inc.,* 2022 U.S. Dist. LEXIS 176825, *22 (D. N.H. September 29, 2022).

The core of this case is that Smith and other owners of Millrock and Millcreek withheld and disguised that: 1) the properties sold were purchased at a fraction of the selling price; 2) that most of the invested money was skimmed off the top for pay-offs and kick-backs; 3) that the tenants were not commercially viable; 4) that there was no real prospect that rent under the long-term leases would ever be paid; and 5) that rents were paid by Millrock or other related entities from newly invested money, not by the tenants. This information is clearly material and none of it was disclosed to Plaintiffs. *See* Sec. Am. Compl., ¶¶ 5-9, 54-56, 59, 81-82.

  iii. **Plaintiffs Sufficiently Plead Scienter.**

Scienter only requires that Plaintiffs specifically allege knowing misrepresentations or omissions by Defendants. This Plaintiffs have done in spades. Judge Campbell in the sister Wilson case, involving different plaintiffs but the same defendants, noted that Ponzi scheme defendants were alleged to have either "1) knowingly misrepresented that [they] had engaged in the due diligence [they] represented [they] had performed; or 2) knew or discovered that some or all of [their] talking points were false. That is scienter." Here, we have the same or nearly identical

allegations.  The same strong inference of scienter plainly follows. 2025 U.S. Dist. LEXIS 66375

### C. Plaintiffs Conferred a Benefit to Smith and Millrock

Defendants argue that the allegation that Smith is an owner of Millrock and that Millrock was paid from fraudulently appropriated investor funds is inadequate at the pleading stage. First, defendants do not contest that Plaintiffs have adequately pled an unjust enrichment claim against Millrock.  Second, defendants, citing *Brumbelow v. L. Offs. of Bennett and Deloney, P.C*., 372 F.Supp.2d 615, 622-23 (D. Utah 2005), argue that if the only benefit conferred was conferred upon Millrock, Smith solely as a corporate representative could not be liable for unjust enrichment. While this may be true, *Brumbelow* addressed a motion for summary judgment. Plaintiffs are confident that discovery will show that Smith received kickbacks and referral or finder fees as well as money directly from each fraudulent transaction. Defendants cite to no case holding that at the pleading stage Plaintiffs must detail how stolen money was distributed to each defendant. On a motion to dismiss, an allegation that the defendant received commissions or other compensation from the fraudulent transactions is sufficient to support the element of a benefit "conferred on one person by another. *Hess v. Johnston*, 2007 U T App 2013.

### D. Because Plaintiffs Have Adequately Plead Misrepresentations and Omissions for Securities Fraud, the Allegations Are Sufficient for Common Law Fraud, Negligent Misrepresentation and Conspiracy.

Defendants move to dismiss Plaintiffs' Fraud, Negligent Misrepresentation and Conspiracy Claims for the same reasons they move to dismiss Plaintiffs' Securities Fraud claims – they argue that the SAC does not meet Rule 9(b) pleading standards. 920, Here the allegations underlying the Plaintiffs' securities fraud claims are the same as those supporting their fraud, negligent misrepresentation and conspiracy claims. If the Court finds that Plaintiffs have adequately plead

securities fraud, then they have also adequately plead their state common law claims. *See, e.g., Bradford v. Moench*, 670 F.Supp.920, 925 (D. Utah 1987); *DiTucci v. Bowser*, 2020 WL 1249627, at *8-9 (finding that where plaintiffs adequately pled their federal securities claim a common law fraud claim premised on the same misrepresentations and omissions is plead with sufficient specificity).[2]

### IV.  CONCLUSION

For the above reasons, Defendants' MTD [Dkt 103] should be denied.

DATED this 10th day of October, 2025.

NELSON CHRISTENSEN
HOLLINGWORTH & WILLIAMS

/s/ Wesley D. Felix
Wesley D. Felix
*Attorney for Plaintiffs*

---

[2] This section is a close paraphrase of Judge Campbell's Order in *DiTucci v. Bowser*, 2020 WL 1249627.