Matthew A. Steward (#7637)
Keith M. Woodwell (#7353)
Katherine E. Pepin (#16925)
Clyde Snow & Sessions
201 South Main Street, Suite 2200
Salt Lake City, Utah 84111
Tele./Fax: (801) 322-2516
mas@clydesnow.com
kmw@clydesnow.com
kep@clydesnow.com

*Attorneys for Defendants Mark Machlis and Green Ivy Realty, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DOUGLAS GOLDSMITH, an individual; and GOLDSMITH PROPERTIES, LLC, a Utah limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>KEVIN G. LONG, an individual; MILLCREEK COMMERCIAL PROPERTIES, LLC, a Utah limited liability company; MILLROCK BLYTHEVILLE, LLC, a Utah limited liability company; MILLROCK INVESTMENT FUND 1, LLC, a Utah limited liability company; COLLIERS INTERNATIONAL, a Utah company; MARK MACHLIS, an individual; and GREEN IVY REALTY, INC., a Utah corporation,<br><br>Defendants. | **DEFENDANTS MARK MACHLIS AND GREEN IVY REALTY, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Case No. 2:24-cv-00499-AMA-CMR<br><br>Judge Ann Marie McIff Allen<br>Magistrate Judge Cecilia M. Romero |

Pursuant to DUCivR 7-1 and Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), Defendants Mark Machlis ("**Machlis**") and Green Ivy Realty, Inc. ("**Green Ivy Realty**") submit this reply memorandum in support of their Motion to Dismiss the Second Amended Complaint (this "**Motion**") filed by Plaintiffs Douglas Goldsmith ("**Goldsmith**") and Goldsmith Properties, LLC ("**Goldsmith Properties**") (collectively, "**Plaintiffs**").

## RELIEF SOUGHT AND GROUNDS

The Opposition is riddled with red-herring arguments and misrepresentations of the Machlis Defendants' arguments. For example, Plaintiffs spend significant time complaining about the purportedly fraudulent statements and omissions alleged in the Second Amended Complaint (the "**SAC**"), and how they were defrauded by the alleged scheme. Even though the Machlis Defendants categorically deny the allegations asserted against them in the SAC, for purposes of this Motion, the Machlis Defendants do not argue that Plaintiffs have not alleged fraud. Instead, the Machlis Defendants argue that Plaintiffs have failed to allege **securities** fraud.

At its core, the transaction at issue in the SAC is a sale and leaseback transaction, and Plaintiffs failed to even address, let alone attempt to distinguish, the factually analogous holdings in *Alamaden Plaza Associates v. United Trust Fund Ltd. Partnership* and *Elson v. Geiger*. The fact that other agreements may have been executed by Plaintiffs with others regarding the Blytheville Property do not change the reality of the agreement at issue. Despite being given a third opportunity to correct the deficiencies in their pleadings, Plaintiffs have yet again failed to adequately plead that the transaction at issue involves the offer, purchase, or sale of a security. It is undisputed that Goldsmith purchased the Blytheville Property in fee-simple and immediately leased the Blytheville Property back to Millrock Blytheville, LLC ("**Millrock Blytheville**"), a

2

standard sale and leaseback transaction that is not a security. Thus, Plaintiffs' claim for securities fraud under the Exchange Act should be dismissed.

All remaining causes of action in the SAC arise under state common law. Once the securities fraud claim brought under the Exchange Act is dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining claims. Based on the foregoing, Mark Machlis and Green Ivy Realty respectfully request that Plaintiffs' first cause of action for violations of the Exchange Act be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), and that the remaining state law claims be dismissed for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

Plaintiffs claim that the Machlis Defendants "assert multiple facts that are unsupported and inconsistent with the allegations of the SAC" and "[t]hese assertions should be disregarded by the Court."[1] However, Plaintiffs fail to identify which facts they believe are unsupported or inconsistent with the allegations in the SAC. The Statement of Facts in the Motion are supported by references to the SAC or to documents relied upon or referred to in the SAC.[2] Plaintiffs have raised no objection to the authenticity of the attached documents, which are referenced in and central to Plaintiffs' claims. Therefore, they can be properly considered by this Court.

---

[1] *See* Opposition, ECF No. 106, p. 3.
[2] *See Smith v. U.S.*, 561 F.3d 1090, 1098 ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits … and documents incorporated into the complaint by reference … The district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.") (internal quotations and citations omitted).

3

## ARGUMENT

**I.     THE TRANSACTION AT ISSUE DOES NOT INVOLVE A SECURITY UNDER FEDERAL SECURITIES LAW**

    **A.     The Transaction at Issue Is a Sale and Leaseback, Not a TIC Interest**

Plaintiffs mischaracterize the terms of the Lease and argue that Millrock Blytheville has the right to sell TIC interests to Plaintiffs and future, unidentified investors. This is incorrect. Under the Lease, **Plaintiffs** have the right "at any time after January 1, 2023 but during the Initial Term of the Lease . . . to contribute the Property to the Tenant [Millrock Blytheville] and convert its fee interest in the Property to a **percentage membership interest in the Tenant** [Millrock Blytheville] as determined below (the "**Conversion Right**")."[3] Thus, Plaintiffs, not Millrock Blytheville, possess the right, but not the obligation, to contribute the Property to Millrock Blytheville in exchange for a percentage membership interest in Millrock Blytheville, not the Property. An equity interest in a limited liability company is not a TIC interest. None of the agreements referenced by Plaintiffs demonstrate that Goldsmith purchased, or even possesses a right to purchase in the future, a TIC interest in the Blytheville Property.

Plaintiffs also mischaracterize the Machlis Defendants arguments in the Motion and claim that "Defendants tacitly acknowledge that the Blytheville investment was structured as a TIC investment, but that this does not matter because no other investors were ever obtained."[4] As demonstrated above, this is an incorrect characterization of both the Machlis Defendants' arguments and the clear terms of the Lease. Under the clear terms of the Parties' various

---

[3] *See* Statement of Facts in Motion ¶ 7.
[4] *See* Opposition p. 9.

agreements, including the Lease, the purchase of the Blytheville Property involved a sale and leaseback, not a TIC interest.

Plaintiffs cite a No-Action Letter prepared by the SEC staff to support their bold assertion that "[i]t is well established that the sale of real property when combined with promises related to long-term returns based on third-party leases are typically securities." *See* Opposition p. 7. However, in that No-Action Letter, the SEC staff was asked to opine on a transaction that involved "the proposed offer and sale of undivided tenant in common interest" or a TIC interest.[5] Plaintiffs also cite to a secondary authority that, again, discusses TIC interests.[6] However, Plaintiffs' purchase of the Blytheville Property does not involve a TIC interest (that is, a fractionalized and undivided interest in real property) and, therefore, the No-Action Letter and secondary authority are not applicable to the transaction at issue in this case.

On the other hand, the Machlis Defendants cited to two cases where other courts have held that sale and leaseback transactions are **not**, without more, a security or investment contract under the *Howey* test.[7] Plaintiffs failed to mention, let alone distinguish, these cases or provide any explanation as to why they are not instructive to this Court in the sale and leaseback transaction presented here.

Plaintiffs cite other cases they claim are "nearly identical to the Millcreek scheme" and should be applied by this Court to avoid a dismissal. However, each of the cases cited by

---

[5] *See Omni Brokerage, Inc., Argus Realty Investors, L.P., PASSCO Companies, LLC*, SEC No-Action Letter (Jan. 14, 2009).
[6] *See* Note: Betting the Farm: the TIC Turf War and Why TICS Constitute Investment Contracts Under Federal Securities Laws, 1 WM. & Mary Bus. L. Rev. 451 (April 2010).
[7] *See, e.g.*, *Elson v. Geiger*, 506 F. Supp. 238, 243 (E.D. Mich. 1980); *Alamaden Plaza Associates v. United Trust Fund Ltd. Partnership*, 860 P.2d 289, 290 (Ore. Ct. App. 1993).

Plaintiffs involved TIC interests. TIC interests are distinguishable from triple-net, commercial lease agreements. As such, the cases cited by Plaintiffs are inapplicable to their purchase of the Blytheville Property. This includes: (1) *Oak Hill Management, Inc. v. Edmund & Wheeler, Inc.*,[8] where the District of Vermont was asked to consider "whether the TIC [interest] can be considered a security, and thus whether it is covered by federal (and state) statutes regulating securities[;]"[9] (2) *San Francisco Residence Club, Inc. v. Amado*,[10] where the Northern District of California was asked to consider "whether the membership and TIC interests were 'securities' as contemplated by the Act[;]"[11] and (3) *S.E.C. v. Sunwest Management, Inc.*,[12] where the District of Oregon was asked to consider whether a TIC investment involved the offer or sale of a security under the Act.

Similarly, the holding in *Baroi v. Platinum Condominium Development, LLC*, is distinguishable from this transaction because the plaintiffs in *Baroi* purchased condominium units in a condo/hotel developed by the defendants.[13] Non-party Marcus Development, LLC was then formed to manage the rental program at the complex, where Marcus Development would rent out the condos as hotel rooms when the owners were not using them.[14] Marcus

---

[8] Plaintiffs incorrectly cite the District of Vermont's opinion from March 16, 2022, 2022 WL 797394 (D. Vt. March 16, 2022). However, the language quoted by Plaintiff in the Opposition actually appears in a different, earlier decision issued by the district court. *See Oak Hill Management, Inc. v. Edmund & Wheeler, Inc.*, 2021 WL 3955669 (D. Vt. Aug. 27, 2021). For clarity, the Machlis Defendants discuss the 2021 decision, rather than the incorrectly cited 2022 opinion.
[9] 2021 WL 3855669, *9 (D. Vt. Aug. 27, 2021).
[10] 2010 WL 2300987 (N.D. Cal. June 4, 2024).
[11] *Id*. at * 3.
[12] 2009 WL 4718775, at *6 (D. Oregon Dec. 9, 2009).
[13] 914 F. Supp. 2d 1179, 1184 (D. Nev. July 11, 2012).
[14] *Id*.

Management, as the operator of the hotel, was entitled to a fifty-fifty split in rental profits with each unit owner and, thus, profits were tied to the success or failure of each unit owner's ability to realize rental revenue.[15] Here, Plaintiffs concede that "Goldsmith was promised by Machlis and Kevin Long, that Goldsmith would receive monthly rent of $14,447.92 escalating to $17,094.77."[16] Therefore, the holding in *Baroi* is inapplicable to the Blytheville Property.

Plaintiffs cite *SEC v. Edwards* because they claim the court held that "a sale-leaseback was an investment contract because the purchasers were promised a fixed return on their investment, which depended on the managerial efforts of the promotor."[17] However, Plaintiffs fail to mention that the purported sale-leaseback did not involve commercial property subject to a lease agreement, but instead involved "payphones … offered with an agreement under which ETS leased back the payphone from the purchaser …"[18] To accept Plaintiffs generous expansion of the holding in *SEC v. Edwards* would make **every** triple-net, commercial lease agreement a security under federal securities laws. Moreover, the investors in *SEC v. Edwards* ceded all control to ETS: "ETS collected the site for the phone, installed the equipment, arrangement for connection and long-distance service, collected coin revenues, and maintained and repaired the phones."[19] Moreover, "[t]he payphones did not generate enough revenue for ETS to make the payments required by the leaseback agreements, so **the company depended on funds from new investors to meet its obligations**."[20] As such, the plaintiffs in SEC v. Edwards were entirely

---

[15] *Id*. at 1195.
[16] *See* Opposition p. 7.
[17] *Id*. p. 13.
[18] *SEC v. Edwards*, 540 U.S. 389, 389 (2004).
[19] *Id*. at 391–92.
[20] *Id*. at 392.

reliant upon both ETS and the resources of other investors to secure its "fixed" return. Therefore, the holding is inapplicable to the sale and leaseback of the Blytheville Property.

Based on the foregoing, Plaintiffs purchase of the Blytheville Property involved a sale and lease back transaction, not a TIC interest, and does not involve the offer, purchase, or sale of a security.

**B.     Plaintiffs Had No Expectations of Profits Derived from the Efforts of Others**

Plaintiffs argue that their expectation of profits under the Lease are derived from the efforts of others, but cite to no case involving a sale and leaseback of commercial property to support their arguments. The Machlis Defendants, on the other hand, have cited to *Elson v. Geiger*, where the Eastern District of Michigan granted defendants' Motion to Dismiss because it held that the "interests involved herein are not 'securities' …"[21] In that case, the district court rejected the plaintiffs' argument that the sale and leaseback, combined with a commercial lease, made plaintiff's expectations of profits solely derived on the efforts of others:

> The return on investment that had been promised to the purchasers was the lessee's fixed rent payment, which was totally independent of its profits or managerial expertise. Although the Plaintiffs argued that seller-lessee's managerial ability was requisite to a continuation of the timely rental payments, this contention alone does not meet the Howey test. **Every lessor, in some measure, is reliant upon his commercial lessee's ability to manage the business profitably; however, such reliance will not render every commercial lease a security**. Furthermore, the fact that the lessor negotiated a net lease is also not dispositive.[22]

---

[21] 506 F. Supp. 238, 243 (E.D. Mich. Nov. 20, 1980).
[22] *Id*. at 243 (emphasis added).

Like the plaintiffs in *Elson*, Plaintiffs concede that Goldsmith was only entitled to fixed rental payments under the terms of the Lease.[23] Plaintiffs are entitled to the fixed rental payment, regardless of whether Millrock Blytheville can obtain a tenant and, therefore, totally independent of Millrock Blytheville's profits or managerial expertise. For example, Plaintiffs could file a legal action against Millrock Blytheville for breach of the Lease to obtain a judgment for these fixed rental payments. Therefore, Plaintiffs' profits are not derived solely from the efforts of others.

    C.    **There Is No Common Enterprise**

Plaintiffs do not attack the Machlis Defendants' argument that there is no horizontal commonality. Instead, Plaintiffs argue that there is vertical commonality because "the investment was marketed by Long and Millcreek as entirely passive."[24] However, there is no vertical commonality here because the fortunes of Plaintiffs are not "interwoven with and dependent upon the efforts and success of" Millrock Blytheville. Under the terms of the Lease, regardless of Millrock Blytheville's performance or efforts, the Landlord, i.e. Plaintiffs, are only entitled to the Fixed Rent payments. Plaintiffs' fortunes on this venture are fixed and independent of Millrock Blytheville's efforts.[25]

Additionally, Plaintiffs' reliance upon *Campbell v. Castle Stone Homes, Inc.* is misplaced. In that case, the investment scheme used individual investors' good credit scores to obtain financing through Castle Stone's preferred lender, and Castle Stone would then use that

---

[23] *See* Opposition p. 7 ("Goldsmith was promised by Machlis and Kevin Long, that Goldsmith would receive monthly rent of $14,447.92 escalating to $17,094.77.")_
[24] *See* Opposition p. 16.
[25] *See Alamaden Plaza Associates v. United Trust Fund Ltd. Partnership,* 860 P.2d 289, 290 (Ore. Ct. App. 1993)

financing to construct, market, and sell an investment home.[26] Once the investment home was sold, Castle Stone would split the profits with the investor plaintiffs.[27] This investment scheme is clearly distinguishable from the sale and leaseback transaction at issue here because the plaintiffs and Castle Stone split profits, and Castle Stone was responsible for obtaining financing for, constructing, marketing, and then selling the investments homes. Lastly, in *Campbell*, the district court recognized that dismissal is still appropriate "when there are no reasonable allegations to support the existence of an investment contract …"[28]

## CONCLUSION

Based on the foregoing, the federal securities-based cause of action asserted against Machlis and Green Ivy Realty in the SAC should be dismissed for failure to state a claim upon which relief can be granted, and the remaining state law causes of action should be dismissed for lack of subject-matter jurisdiction.

DATED this 31st day of October, 2025.

CLYDE SNOW & SESSIONS

/s/ Katherine E. Pepin
Matthew A. Steward
Keith M. Woodwell
Katherine E. Pepin

*Attorneys for Defendants Mark Machlis and Green Ivy Realty, Inc.*

---

[26] 2011 WL 902637, at *1 (D. Utah March 15, 2011).
[27] *Id.*
[28] *Id.* at *4.

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of October, 2025, I electronically filed the foregoing **DEFENDANTS MARK MACHLIS AND GREEN IVY REALTY, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all parties of record.

*/s/ Doug Layne*
Legal Assistant

4912-3944-2549, v. 4